Mr. Justice Johnson
delivered the opinion of the court. This case comes- up on- a bill of exceptions. This chhrge of the Judge was' given proforma, generally against the plaintiff, and the verdict conforms to it* There are many counts in the declaration, and ' if, on any of those counts the plaintiff was entitled to recover, the judgment below miist be reversed.
an^a X3th of February, and 24th of July, revocation of ¿"thefetl ter of the 9tk of January,
The first count is on a refusal to pay two sets ' of bills drawn on Taber & Soil of Portland, payable in New-York. These bills were duly protested and returned, and. the amount, with damages, refunded by the plaintiff.
In defence to this count it i.s contended: That the undertaking of Barker, as expressed in his letter of the 9th of January'-,. 18U6, relates to a different transaction from that upon which this cotton was purchased ; that this transaction originated in the letters of the 26th of January, or 24th of July, 1806, or of the. 20th. February, 1807, and in neither of those letteis .is the undertaking, on-bills to be drawn on Taber & Son, re'iterated: That the letters alluded to contain, in fact, an implied revocation of the undertaking in the letter of the 9th, of which the plaintiff was bound to take notice.
To the correctness of these positions, this court cannot yield its assent. Nothing'could be more J ° ^ ent with that candour'and good faith which ought to mark the transactions of mercantile men, than to favour the revocation of an explicit contract on the construetion of a correspondence no where avowing that ob-1 ject. , It was in the defendant’s power to have revoked his assumption, contained in the letter of. the 9th, at any time prior to its execution, but {if was incumbent on íiim to have done so avow'edl}-, and in language that could not be charged with equivocation. In this case, wé discover nothing from which such .an intention can fairly* be inferred. The whole correspondence refers to the same subject, and has in view the same object. The expediting of the ,ship Mac on freight, if *144 freight could be obtained, and. if" not, to be filled úp,. (at least to the-quantity of cotton here purchased,) oh owner’s account. This agency the plaintiff undertakes expressly on the credit of Barker, for a house, with whose credit, except on his introduction, he i's unaquainted : and so far from restricting the order contained in' the'letter of the 9th, there is not one from the defendant, in-the subsequent correspondence, that does not enlarge the order as to quantity, upon the contingency of the ship not getting freight.
But, it is contended, although the original assumption may not have been revoked, it was not complied with, according to the terms in which it was expressed, and, therefore, was not binding, to the defendant. And on this ground, so far as relates to the bills in this-count, the court is of opinion, that the defence is supported oil legal principles. The assumption is to guaranty bills, “drawn on Taber & Son, Portland, or me, at 60 da^-s sight.” These bills are drawn on Taber& Son, Portland, payable in New-York. Now, al-, though we cannot see why an honourable discharge of his contract did not-prompt the'.defendant to accept-these bills for-the honour of the drawer, when they were returned to New-York for non-acceptance, yet, as it is. our duty to construe the contracts of individuals, and not to make them, we are of opinion, that these bills were nob-driwn in conformity to the assumption of the defendant. Merchants well understand the difference between drawing hills upon a specified place, and drawing them upon one place payable in another. We are not to inquire into the *145 reasons which govern them in forming such contracts, or competent to judge, whether any. other mode of complying with a contract may not be as convenient 'to them, as that which they have consented to be governed by. But it will be perceived,' that this opinion can: only effect the right of the plaintiff to recover the .damages'paid by him on the return of those bills, and ,.. , . has no eflect, m this view of the case, upon the plaintiff’s right to recover, upon the original guaranty of this debt, when legally demanded..
Although the bills on Tabor not drawn ac-1 cording to' the defendant’sas^^'oniy tiff’s'rlgEt^to recover the dahim on the r* recover^on the original guaranty of the debt.,
The plaintiff, by making his election . to draw upon T. & Son in the first instance, did not preclude' • himself from resorting to the defendant, whose undertaking was in effect a promise to furnish the funds necessary to carry the adven-• ture into execution.'
It is, however,contended, that the election to draw in this form, was conclusive upon the plaintiff, and he could not afterwards resort to a draft upon the defendant himself. And this brings up the question upon the plaintiff’s right to recover upon the second count, , A _ This count is on a refusal to pay a bill drawn on Barker himself, for the exact balance of the invoice of the cottonj after crediting the defendant with the bills that he had paid. This bill was- not negotiated and returned, but drawn in favour of an agent of the plaintiff, and of course nor damages are demanded on it.
The 'defence set up to this count, to wit, that the plaintiff, by making his election to draw. upon Taber and Son, is thereby precluded from restoring to Barker, we think cannot be sustained. It is in vain that we look for any passage in the correspondence that holds out this idea, not is there any-thing in- the nature of the transaction that will sanction this court in attaching such a restriction to Barker’s undertaking. It was in effect a. promise to furnish the funds necessary to into execution this adventure. Haditcon *146 tained a mere guaranty of bills to be drawn on Tabef & Sons, there might have been some ground for this argument; but where the defendant confers the right to draw upon himself, and, in fact, clearly recommends a preference to such bills, he makes.himself the paymaster, and we consider it an Original substantive undertaking. In this view of the case, the law quoted on. the subject of securityship undertakings cannot be applicable, arid we think the plaintiff .ought . to recover on this count.
enU^au*thonty dmwWUsfrom a certain place advances there* totikrng is replace the-place. The in - terest of New-•Orleans-, therefore allowed in this case.
There are other items in.the plaintiff^ demand, on which, as the case will be sent back, it is necessary to express an opinion. The first is the charge of about 1200 dollars- for services and expenses incident to this agency; the other is the charge of interest. •
The first of these , items we are clearly of opinion the plaintiff is entitled to, and'that it is recoverable un^er the counts for services performed, and .money ex-Peni^ec^ iuthb discharge of this undertaking. Andas to the'second, we are equally satisfied that interest is recoverable under the second count in nature óf damaBut some difficulty has. arisen on the question whether the plaintiff is entitled to recover the interest 0f New-Orleans or ofNew-York. The former, the bill . • ,. • of. exceptions states to be ten per cent.:: tne latter , seven per cent*.
AYherfe a general authority is given to draw billsfrom. a certain place, on account of advances there made, ■the undertaking is-to replace the money at that place. Had this bill bn Barker been negotiated and', returned under protest, the holder would have been entitled to demand oftlte drawer the interest of-New-Orleans, and *147 thus incidentally at least, the defendant would have been compelled to pay the plaintiff that interest. But it may be contended that as the letter of the 26th appears to restrict the order for this purchase, so as t01 make it depend on the condition of the practicability of negotiating bills on New-Yo.rk, the undertaking of Barker was limited to payments to be made in New-York. On this point the court ore of opinion that, even though we attach this condition to Barker’s undertaking, the liability to replace the money at New-Orleans still continued; and any necessary loss on the bills on account of the difference of exchange, would have been chargeable to the defendant; but' we think, farther, that the restrictive words in the letter alluded to may justly be considered as enlarged into a general order in his subsequent correspondence.
A x dis-partie», stating the amount of dam-judged* upon ^ives disr£ garded» and a venire de novo■ awarded ^to assessed
The court is therefore of opinion, that as the money**' was advanced at New-Orleans, and to be replaced at. New-Orleans, the plaintiff may claim the legal interest at that place.'
This court is of opinion that there is error in the judgment below, and that it must be reversed.' But this court can do no-more than order a venire facias de VO-..
An attempt has been made to obtain from this court a mandate to the circuit court, to entera judgment in conformity to an agreement <?f parties entered on the J * transcript, which"states the amount to be adjudged to the plaintiff,-upon several alternatives. But we.are opinion that this court can take no notice of that sent.' -The-verdict presents rio ' alternative :■ .and.the *148 consent entered on thé transcript or on the minutes of the circuit court, forms no part of the record brought up by this writ of error. Nor-will'this court be led into the exercise of a power so nearly approaching the province of a jury in assessing damages.
Judgment reversed.a

 Although eontractsof guaranty are very familiar in the practice of the commercial world, comparatively few cases hav.e been subjected to judicial decision in the English and American tribunals. It. may not, however, be without use to the learned reader, to collect the' principal adjudications on this subject, especially as no attempt' has yet bécn made to bring them before the public in a. connected view.
Contracts of guaranty, like .all commercial contracts; have received a liberal interpretation in furtherance of the in-tention of the parlies. But at the same- time, they are not extended beyond the obvious, import of the terms in their reasonable interpretation.— Where, in a letter of introduction of a mercantile firm, the defendants used the following terms. — “We do ourselves the pleasure of introducing them to your correspondence, as a house on whose integrity and- punctuality, the Utmost, dependence may be placed •; they will write you the nature, of their intentions, and you may be assured. of their complying fully with any contract or engagements they. may. enter into with you,” it was held that the letter did not import a guaranty of such er:T gagements; and that parol evidence was not admissible to explain'the térras so as to affect their import, with regard to the' supposed guaranty. Russel v. Clarke, 3 Dall. 415. S. C. 7 Cranch, 69. So where-B. wrote'to-C. “as. I. understand Messrs., A. & Co. have given you an order for rigging, &c. which will amount to 4,0001. I can assure you, from what I know of A.’s honqtjr and probity, you will be peyr fectly safe in crediting them to that amount; indeed I have no *149 objection to guaranty you against any loss, from giving them this credit;”, it- was held that the Writing, did not import a perfect and conclusive guaranty, but,only a proposition or overture tending to a guaranty; and that to make it a guaranty, B. ought to havó had notice, that it was so regarded and meant to be accepted or there should have been a subsequent consent.on his part to con veri it into a conclusive guaranty. M'Iver v. Richardson 1 Maule and Selwyn, 557. But it is said that the words are to be taken as strongly against the party giving the guaranty, as the sense of them will admit, of, Therefore, where the defendant wrote ■ the plaintiff', “I hereby promise to be responsible toT. M. [the'plaintiff, ] for any goods he hath or may supply my brother W. P. to the amount óf 100,,” it was held that this was a s:anding, o,r contiu'ing guaran!y to the extent of 1002., which might at any time become .due for goods supplied, until; the credit was recalled. At the time the letter was written, goods had been supplied to the amount of 662.,-and afterwards, another parcel was delivered, amounting .together with the former tó 124/., all which had been paid for, and the sum now in dispute, (and which by the judgment of the court, the plaintiff recovered.) was for.a farther'supply to W. P. Mason v. Prichard, 2 Camp. N. P. 436. S. C. 12 East. 227. Srn where the defendant wrote to the plaintiff, “I have been,ap-plied to by my brother, W...W-. to be boiind to you for apy debts he may contract, no.t to. exceed 1002. (with you,) for goods necessary in his business - 9s a jeweller; I have wrote to say by this declaration, I consider myself bound [to you for any debt he may contract- for his business as a jeweller, not exceeding 1002.afler this date.’’ Lord Ellcnborough said, that-the defendant was answerable for any debt not. exceeding 1002.,which W. W. might/rom time to time contract with the plaintiff in the way of business; that the guaranty was not confined to. enq instance, but applied to'debts successively renewed; and that if a party, meant to be a surety only for a single dealing, he should say so. Merle v. Wells, 2 Camp. N. P. R. 413. So, where the defendant wrote, “I. hereby undertake and engage to be answerable to the extent of *150 3001. for any tallow or soup supplied by Mr. B. [the plaintiff] toF. & B., provided they shall neglect to pay in due time;”LordEIlenborough held it to be a continuing guaranty while the parties continued to deal on the footing established when it was given; but that goods supplied after new arrangements were made, were not within, the scope of the guaranty; and he relied on the word “any,” without which he thought it might perhaps be confined to one dealing to the amount of3001. Baston v. Bennett, 3 Camp. N. P. 220. But in debt op a bond entered into by A; and B. with the plaintiffs, reciting,that it was to enable A. to carry on his trade, and conditioned for the payment of all such sum or sums of money not exceeding 30001. with lawful interest, which should or might at any time or times .thereafter.'be advanced, and lent by the plaintiffs to A. or paid to his use, by his order and direction,” it was held, that it was a guaranty for the definite amount of 30001., and when an advance was made to that amount, the guaranty became’/imclws officio, and was hot a continuing guaranty, Kirby v. Duke of Marlborough 2 Maule and Selwyn, 18. And, where the defendants wrote to the plaintiff “If W. & B., our sons, wish to take goods of you on credit, we are willing to lend our names as ■security for any amount they may wish,” the court held, that.it was not a • continuing guaranty, but was confined to the first parcel of goods sold to W. & B.; that it gave an unlimited credit as to amount, but was silent as to the continuance of "the credit to future sales, and expressio unius, eat ex-clusio qlterius. Rogers v. Warner, 8 Johns. Rep 119. and in . a very recent case, where the defendants .wrote to the plaintiff, “our friends and connexions S. &• II. H. contemplate under certain circumstances, making a considerable purchase of goods oh. the continent, and for that purpose, are about to send,an agent to Europe. They wished a letter of credit from us to increase their means, and to be used ■ or not asjjircumstances may require. As wé are now indebted to you, and have.no funds on the continent of Europe, we told them we • could not give a positive letter of credit for any sum, but that we had no doubt you would *151 be disposed to furnish them with funds under our guaranty. The object of the present letter, is therefore, to request you, if convenient, to furnish them with any sum they may want, as far as $50,000, say 50,000 dollars. They Will reimburse you the amount they receive, together with interest, as soon ás arrangements can be'made to'doit. ..We shall hold ourselves answerable to you for the amount;” it. was-held, that was a. guaranty fot a single advance to the amount of 50,000 dollars, and not a continuing guaranty, toties quoties, to that amount; and that as soon as 50,000 dollars were once advanced, the guaranty ceased to operate upon future advances, although by intermediate payments the sum due at the time of such new advances, were' below 50,000 dollars. Cremer v. Higginson, circuit court U. S. Mass. Oct. T. 1817. MSS. Where A. requested B. to give C. any as-. ■ «stance in the purchase of goods, by letter, or otherwise, adding, “you may consider me' accountable with him to / you, for any contract he. may make; it was held, that A. was to be considered as a-guarantee, and not a joint debt- or, and that a - contract by C, with B. to pay him a premium for guaranteeing a contract of C. with a third person was within A’s promise. Meade v. M'Dowell, 5 Binney, 195.
A. guaranty to the plaintiffs “that if they will credit D. a sum not exceeding $500 in case he shall n«St pay it in twelve months, the guarantee will pay it,” doe.s not imply a condition that the plaintiff may not advance more than $ 500, if the additional advance be on the general credit of D.—Sturges v. Robins, 7 Mass. R. 301.
A guaranty, “wc jointly and severally promise to guaranty a payment of 500/. af 5 per cent.' .say, by a bill drawn on G. H. byD. and F. for 500/. dated 10th of January, 1808,” is to' be construed as a general guaranty-.Of the bill, not(as usual^. a guaranty that the acceptor should pay, but a contractthat either the drawer or the acceptor should pay. Philips v. Astling, 2 Taunt. Rep. 206. But upon such a guaranty (if it is to be construed as limiting the bill to the specific sum of 500£) the guarantee would not be liable to the. extent even of the 500/. if the bill be drawn for a *152 larger sum ; for the terms of the contract must be strictly complied with. lb. And a guaranty to Ai' for goods to 1>, sold by him on credit to B. will not enure tQ the benefit of a third person, who shall actually furnish the goods to B. . although at. the request of A., for a surety is not to be held beyond the scope of his own engagement. Robbins v. Bingham, 4 Johns. Rep. 476. Walsh v. Bailie, 10 Johns. Rep. 180. And see 1 Maule & Selw. 557. So if a letter of - credit be addressed to A., and part of the goods are delivered by A., and pai t by C. and D., the latter cannot recover on the guaranty. Robbins v. Bingham, 4 Johns. Rep. 476. So, a. letter of guaranty, addressed to J. & A. N. by mistake, for J. & J. N. will riot cover advances made by the latter on the faith of the letter. Grant v. Naylor, 4 Cranch, 224. Many cases analogous to this have been deci.ded. As where A.- became surety'by bond that B. should truly ■ account to C. for all sums of money received by B. for O.’s use, and afterwards B. .took a partner with C.’s knowledge, it was ruled that the guaranty ,'id not extend to sums received by B. arid his partner, for C.’a use, after the formation of the partner» ship. Bellairs v. Elsworth, 3 Camp. N. P. 53. So a bond ■ conditioned to repay all sums advanced by Jive persons, or any of them, was held not to extend to sums, advanced after the decease of one of them by the four survivors, the four then acting as bankers. Weston v. Barton, 4 Taunt. 674. And to the same effect will' be found the following-cases; Arlington v. Merritt, 2 Saund, 44. Wright v. Russel, 2 W. Bl. 934. S. C. 3 Wils. 539. Barker v. Parker, T. R 287. Myers v. Ede, 7 T. R. 254. Strange v. Lee, 3 East, 484. But if a bond.be given to trus* tees conditioned' for the faithful service of a person during, his continuance in the service 'ofa fluctuating or successive body of1 persons, not incorpora" ted, as the Globe Insurance -Company, it will extend to the whole time the party is in the service of such company, although the members may be-continually changing. Metcalf v. Bruin, 12 East. 400. An agent in England for merchants the vendors of goods in Russia who guaranties “that the shipment shall be in conformity with the revenué laws of Great Britain, so (hat no impediment *153 ' ebrall arise upon the importation thereof, or that in default, the consequences shall rest-with the sellers,’’makeshimself personally responsible to the vendee, Readhead et al. v. Cator, 1 Starkie’s N. P. R. 14. An impediment arising from . nomcompliance with the JV«yigálion Act, is an impediment within the terms of the guaranty. And such a guaranty is not within the statute of frauds, if the terms of the agreement can be collected from the written correspondence between the parties. Id. A. engages to guarantee the amount of goods supplied by B. to C,, provided ,18 months credit be given; if B. gives credit for 12 months only, he is not entitled, -at the expiration of six months more, to call upon A. or his guaranty. But B. having, after the commencement Of the action, delivered an invoice from which it appears that credit was given for 12 months only, is át liberty to show that this was a mistake, and that, in fact, 18 months credi t was given. Bacon v. Chesney, 1 Starkie's N. P. R. 192.
In cases of guaranty, it has been made a question, whether notice ought to be given to the guar¿ .ntee of the advan*ces made, and of the non-payment by the debtor.-' In Oxley v. Young, 2 H. Bl. 613, where the defendant, upon an undertaking of D; to indemnify biro, guarantied to the plaintiff an order sent to him by A. for certain goods, and the plaintiff informed the defendant that the goods were preparing, but did not give him notice of the ac_ tual shipment, the court . thought that the right to sue on the guaranty attached when the order was put in a train for execution, subject to its being ■ actually executed; and that the notice of such intended execution was sufficient; and the court farther thought, that that right could not be devested even by a wilful neglect of the plaintiff, though, perhaps, he might be liable to an action on the case at the suit of the defendant, if any such neglect could be shown contrary to all good faith, and by which a los3 had been incurred. In Peel v. Tutlock, 1 Bos. & Pull. 419. Chief Justice Eyre appears to have been of opinion, that at least in guaranties for go: d be-w haviour, notice of any embezzlement or fraud ought to be given within a reasonable time; but the c.ase finally went off upon narrower ounds. la *154 Russell v. Clarke, 7 Cranch, 69. 92. it was distinctly held .j^ tpe cour^ that if the contract in that case had been a guaranty, it would, certainly have been the duty of the plaintiff to have given imrnediate notice to the defendant of the extent of his engagement.' And the same doctrine was ascerted in the circuit court, in Cremer v. Higginson, already cited.
Where -there is a guaranty of advances or supplies, it is necessary in the first instance to mpke a demand of payment from the original debtor, or at-least to use reasonablediligence in endeavoring to make such a demand, and notice -of nonpayment must be given in a reasonable time to the guaran'tee. This may be collected as the general result of the cases on this subject. But where an agent in Erigjand, for merchants the vendors of goods in 'Russia, who guarantees “that the shipment shall be in conformity with the revenue laws of 'Great Britain, so that no impedinisnt shall'arise upon the importation thereof, or that indefault the consequence shall rest with the sellers,” it-was held that the agent made himself personally responsible to the vendee, and that in a íe-duration upon such a guarantee against the agent, it is unnecessary to allege any appli — . cation for indemnity to the principals. Readhead et al. v. Cator, 1 Starkie’s N. P. R. 14. And it is1 not necéssary to sue the debtor, before the right attaches to sue on the guaranty, Bank of New-York v. Livingston, 2 Johns. Cas. 409. And where the guaranty is ofa note or bill payable at future time* although it is not necessary to pursue the same strictness i» order to diarge a guarantee as to charge' the drawer; yet a due demand and notice of nonpayment ought to be given to the drawer and guarantee ; and if the-necessary steps are not taken to obtain payment from the parties who- are lia— ble on the bill, and solvent, the guarantee is discharged. Phillips v. Astling, 2 Taun. 206. Warrington v. Furber, 8 East. 245. But it is a sufficient excuse for not making a demand, thafthe debtor cannot be found or that he is insolvent. Warrington v. Furber, 8 East, 245. Phillips v. Astling, 2 Taunt. 206. And if there be gross' laches, in securing the. debt. (Duval v. Trask, 13 Mass. R. 154. The People v. Jansen, *155 7 Johns. R, 332, Hunt v. United States, 1 Gallis, 34.) or if '. the creditor undertake to do any thing whereby to lessen or postpone the reáponsibility of the debtor; (Commissioners of Berks v. Ross, Binney, 520,) or if the right of the parties be altered, as if any new debt have been incurred; or if the demand have been enlarged to the prejudice of the guarantee; (Peel v. Tatlock, 1 Bos. & Pul. 419, King v. Baldwin, 2 Johns. Chan. R. 554. Boultbee v. Stubbs. 18 Ves. 20.) or if the creditor give time to his debtor ■without' the knowledge of the guarantee ; (Skip v. Huey, 3 Alk. 91, 6 Ves. 809. note a. Rees v. Berrington, 2 Ves. Jun. 540. Nisbit v. Smith, 2 Bro. Ch. Cas. 579. Moore v. Bowmaker, 6 Taunt. 379. S. C. 2 Marshall’s R. 81.) or if upon a guaranty of' á partnership debt, the partnership debt is discharged by' carrying the prdpoctions of each partner to hisseparate account without any notice to the guarantee; (Cremer v. Higgonson, MSS. above cited;) or if there be a fraudulent concealment to the injury of the guarantee ; (Oxley v. Young, 2 H. Bl. 613, Semble, Eyre, C. J.) in all these cases the cruarantee is discharged. And it has been .held in a recent case, that if the holder of a note is requested by the surety, (being one of-the joint makers,) to proceed without delay and collect the money of the principal, who is solvent, and he omits to do it,. until the principal becomes insolvent, the surety will be exonerated at law. (Paine v. Packard, 13 Johns. R. 174,) But this decision has been'. questioned, by very high authority. (King v. Baldwin, 2 Johns. Chan. R. 563, 564.) Where there are-several debts due, some of which are guartiédand some, not, and paj'ments are made by one debt-. or, the same general rule applies in this as in other cases, that where the debtor makes -no application of any payment, the creditor may apply it to any account he pleases. (Kirby v. Duke of Marlborough, 2 Maule & Selw. 18. Dawson v. Remnant, 6 Esp. R. 26. Field v. Holland, 6 Cranch. 8. Hutchinson v. Bell, 1 Taunt. 558. Sturges v. Robbins, 7 Mass. R. 301.)
Pothier, in his treatise on'' Obligations, has discussed with great learning and ingenuity the whole doctrine of surety-sliin and ffuarantv. Traite des *156 Obligalions, part 2. ch. 6. sect. 1 to 8. Among other things'; he remarks, that Card should be taken not to take for a promise to .become surety, what '0,ne says or writes-, unless there' be a well-marked' intention to do so. Therefore, be adds, if I wrote or said to you, that a man whocasked you to lend you niondy, was solvent, this Could not be taken for aft 'agreement to become a surety fori might-well httve no other •intention than to inform you of what I believed to be the cáse -and not to bind myself. On this principle it was adjudged in a case reported in.-Papon X. 4. 12. that these words, in a letter to the keeper of a-boarding-house, “A. B, ipténds to send his son to board with you. He is, an honest man and. will pay you well,” did pot include an • obligation. On the same .principle, if I accompany a pcrsbi} to a woolen-draper’s, •Where he buys cloth; the dra- ■ per ought not to conclude that I am security for him. The following distjnetions and principles stated .by this learned •;writer, seem worthy of notice, -in reference to -the subject of this note. • 1. "Where the surety has expressed the sum and cause for. which he became surety, his obligation does not extend beyond the sum abd cause expressed. As if one become bound for the principal debt, he will not be liable for interest. 2. On the other hand, when the words of the surety* ship are general and indeterminate, fhe surety is. presumed to have hound himself for aH the obligations of- the debtor resulting from.the contract to which he acceded; and, therefore, a surety in generel terms, is bound not only for the principal sufti, but for interest; and not only for the interest due ex rei natura, but for that occa-. sioned by the delay of the debtor. And this is conformable to the doctrine of the Roman law, 3. And, in general, however Unlimited the surety-ship may be,' it does not extend to the penalties- to which th® debtor may be -condemned. ' officio jndices propter suam contumaciam. 4. The obligation of suretyship is extinguished by an extinction of the princi • pal'debt; by the creditor’s disabling himself by his own act from ceding his ¿ction against his principal debtor, which the surety has an interest in having assigned to him; by the credi-' tor’s accepting in payment property, the title to which after- ■ wards proves to be invalid, at least if the p.incipal debtor in *157 thé mean time becomes insolvent. 5. And the principal debt may be extinguished not only by payment oru set off or release, but clso by a novation of the debt, that is, by accepting a new obligation in discharge of the old one. 6! Pothier then puts the case, whether the-surety be discharged by the creditor’s granting to the debt- or á delay for the payment, and ■ agrees With Vinniüs in holding the negative, for he says, the Simple delay, not making the debt appear discharged, deprives the surety of no means of providing for his own safety and the surety cannot preíten d 'that the delay prejudices him, since he himself derives an advantage from it. 7. According to the principles of the ancient civil law, the creditor could demand payment from the surety without first resorting for payment to the principal debtor. Bpt Justinian altered that rule, and gave to the surety an exception or plea, which is called an exception of discussion, or of order, by. which he may require the creditor to proceed fn the first instance against the principal debtor. And this rule, with some exceptions,, was adopted into the ancient jurisprudence of France. But at no time, either in the civil or French law, did the bringing of a suit by the creditor against his principal debtor discharge • the'surety, who, therefore, remained bound, until payment. And the omission of the creditor to institute a suit of discussion against the principal debtor, notwithstanding a request of the surety, until after the debtor becomes insolvent, is not thought to discharge the surety. But if a surety had contracted only to pay what the creditor could not obtain from the principal debtor, an omission to sue for a long lime, and until after an insolvency, may discharge the surety. 8. To entitle the surety, after payment, to recover over against the principal debtor, it is necessary that the surety should not have neglected, by his.own fault, to plead any proper plea in bar of the creditor; that the payment should have been, valid, and should have, discharged the principal debtor; god that the principal debtor should not have paid a second time ny the fault of the surety See *158 Pothier, Traite des Obligations part 2. ch. 6. s. 1 to 8. The Code JVapoleon, or civil code, adopts, for the most part, the doctrines stated in Pothier. Liv. 3. tit. 14. art. 2011, &c. to 2043. It declares that a guaranty or suretyship, (cautionnement,^ ought not to be presumed; it ought to be express; and ought not to be extended beyond the limits of the contract itself. An indefinite ’guaranty of. a principal obligation extends to all the accessories of the debt. The guarantee is not bound to pay but upon the default1 of the debtor,_who ought, in the first instance, to be sued by discussion, against his'goods. In a suit against the guarantee, he may enter the same exceptions. to the debt (except they are purely personal)’ as the principal • debtor may. The surety is discharged, when by the act of thé creditor the guarantee can-’ not have the benefit of a substituti'on to the rights, liypothecntion, and privileges of the. creditor. A simple postponement of the time granted by the creditor to the debtor, does not'discharge the guarantee, who -may, however, in that case, pursue the debtor to enforce payment. Code Napoleon, ubi supra. See also, the Digest of the civil Laws of Louisiana, p. 429. Erskine’s Institutes of the Laws of Scotland, 10th ed. 326. The. coincidences between the doctrines of the common law, and those of the civil law, and the codes derived from it, are very striking ; and. the differences in particular cases, seem to result rather from the difference of the remedies, of guaranties and sureties, under the various systems, (which, of course, require -a corresponding, change as to their Iiability,) than from any theoretical opposition in principles,