46 U.S. 295 (____)
5 How. 295
WILLIAM G. COOK, PLAINTIFF IN ERROR,
v.
JOHN L. MOFFAT AND JOSEPH CURTIS, DEFENDANTS IN ERROR.
Supreme Court of United States.

*298 The cause was argued by Mr. Mayer, and Mr. Johnson, for the plaintiff in error, and by Mr. Hinkley, for the defendants in error.
*306 *307 Mr. Justice GRIER delivered the opinion of the court.
This case comes before us by a writ of error to the Circuit Court of the United States for the Maryland District.
Moffat & Curtis, merchants in New York, sold goods to Cook, who resided in Baltimore. On a settlement of their accounts, Cook transmitted his notes to his attorney in New York, who delivered them to the defendants in error. After the notes fell due, Cook applied for and obtained the benefit of the insolvent laws of Maryland. By these laws the debtor, on surrender of his property, is discharged not only from imprisonment, but from his previous debts.
On the trial of this case in the Circuit Court, the plaintiff in error pleaded this discharge, insisting, "that the contract was to be performed in Maryland, and governed by the laws of Maryland in existence at the time it was made; and that, therefore, his discharge under her laws was a good defence to the action." The Circuit Court gave judgment for the plaintiffs, and the defendant prosecuted this writ of error.
That the contract declared on in this case was to be performed in Maryland, and governed by her laws, is a position which cannot be successfully maintained, and was, therefore, very properly abandoned on the argument here. For, although the notes purport to have been made at Baltimore, they were delivered in New York, in payment of goods purchased there, and of course were payable there and governed by the laws of that place. See Boyle v. Zacharie and Turner, 6 Peters, 635; Story's Confl. of Laws, § 287.
The only question, then, to be decided at present, is, whether the bankrupt law of Maryland can operate to discharge the plaintiff in error from a contract made by him in New York, with citizens of that State.
In support of the affirmation of this proposition, it has been contended, 
1st. "That the State of Maryland having power to enact a bankrupt law, it follows as a necessary consequence, that such law must control the decisions of her own forums."
2d. "That the courts of the United States are as much bound to administer the laws of each State as its own courts."
It has also been contended, that the case of Ogden v. Saunders, while it admits the first proposition, denies the second, and that this court ought to reconsider the whole subject, and establish it on principles more consistent.
But we are of opinion, that the case of Ogden v. Saunders is not subject to the imputation of establishing such an anomalous doctrine, although such an inference might be drawn from some remarks of the learned judge who delivered the opinion of the court in that case; the question, whether a State court would be justifiable in giving effect to a bankrupt discharge which the courts of the United *308 States would declare invalid, was not before the court, and was therefore not decided. Nor has such a decision ever been made by this court.
The constitution of the United States is the supreme law of the land, and binds every forum, whether it derives its authority from a State or from the United States. When this court has declared State legislation to be in conflict with the constitution of the United States, and therefore void, the State tribunals are bound to conform to such decision. A bankrupt law which comes within this category cannot be pleaded as a discharge, even in the forums of the State which enacted it.
It is true, that as between the several States of this Union, their respective bankrupt laws, like those of foreign States, can have no effect in any forum beyond their respective limits, unless by comity. But it is not a necessary consequence, that State courts can treat this subject as if the States were wholly foreign to each other, and inflict her bankrupt laws on contracts and persons not within her limits.
It is because the States are not foreign to each other in every respect, and because of the restraint on their powers of legislation on the subject of contracts, and the conflict of rights arising from the peculiar relations which our citizens bear to each other, as members of a common government, and yet citizens of independent States, that doctrines have been established on this subject apparently inconsistent and anomalous.
Accordingly we find that when, in the case of Sturges v. Crowninshield, this court decided, "that a State has authority to pass a bankrupt law, provided there be no act of Congress in force to establish a uniform system of bankruptcy," it was nevertheless considered to be subject to the further condition, "that such law should not impair the obligation of contracts within the meaning of the constitution of the United States, art. 1, sec. 10."
It followed, as a corollary from this modification and restraint of the power of the State to pass such laws, that they could have no effect on contracts made before their enactment, or beyond their territory. Hence, at the same term, the court unanimously decided, in the case of McMillan v. McNeil, that a contract made in South Carolina was not affected by a bankrupt discharge in Louisiana, under a law made antecedently to the contract, although the suit was brought in the Circuit Court of the United States for Louisiana. That case was precisely similar in all respects to the one before us.
In the Mechanics' Bank v. Smith, a discharge under a Pennsylvania bankrupt law was held not to affect a contract between citizens of that State, made previous to the passage of the law.
Next followed the case of Ogden v. Saunders, which has been made the subject of so much criticism. In that case, Saunders, a citizen of New York, drew bills on Ogden in New York, which *309 were accepted and protested there. Ogden was afterwards discharged under the insolvent laws of New York, passed previous to the contract of acceptance, and pleaded this discharge to an action brought against him in the District Court for Louisiana. A majority of the court there decided, 
1st. "That a bankrupt or insolvent law of any State, which discharges the person of the debtor and his future acquisitions, is not a. law impairing the obligation of contracts, so far as it respects debts subsequent to the passage of such law."
2dly. "That a certificate of discharge under such a law cannot be pleaded in bar of an action brought by a citizen of another State."
We do not deem it necessary, on the present occasion, either to vindicate the consistency of the propositions ruled in that case with the reasons on which it appears to have been founded, or to discuss anew the many vexed questions mooted therein, and on which the court were so much divided. It may be remarked, however, that the members of the court who were in the minority in the final decision of it fully assented to the correctness of the decision of McMillan v. McNeil, which rules the present case.
The case of Boyle v. Zacharie, 6 Peters, 635, is also precisely parallel with the present. The contract declared on was made in New Orleans; the defendant resided in Baltimore, and, on suit brought in the Circuit Court for Maryland, pleaded his discharge under the Maryland insolvent laws, and his plea was overruled.
So far, then, as respects the point now before us, this court appear to have always been unanimous; and in order to meet the views of the learned counsel for the plaintiff in error, we should be compelled to overrule every case heretofore decided on this most difficult and intricate subject. But as the questions involved in it have already received the most ample investigation by the most eminent and profound jurists, both of the bar and the bench, it may be well doubted whether further discussion will shed more light, or produce a more satisfactory or unanimous decision.
So far, at least, as the present case is concerned, the court do not think it necessary or prudent to depart from the safe maxim of stare decisis.
The judgment of the Circuit Court is therefore affirmed.
Mr. Chief Justice TANEY.
I gave the judgment in this case in the Fourth Circuit, because, sitting in an inferior tribunal, I felt myself bound to follow the decisions of this court, although I could not assent to the correctness of the reasoning upon which they are founded. And I acquiesce in the judgment now given, since a majority of the justices have determined not to consider the question upon the operation of the insolvent laws of the States as altogether an open one; and undoubtedly, according to the decisions heretofore given, the judgment of *310 the Circuit Court ought to be affirmed. But, in my opinion, these decisions are not in harmony with some of the principles adopted and sanctioned by this court, and therefore ought not to be followed.
The opinion delivered by Judge Johnson in the case of Ogden v. Saunders was afterwards concurred in and adopted by a majority of the court in the case of Boyle v. Zacharie and Turner, 6 Peters, 643. And the subject has not since been brought to the attention of this court until the case now under consideration came before it.
The opinion of Judge Johnson is stated by him in the following words.
"The propositions which I have endeavoured to maintain, in the opinion which I have delivered, are these: 
"1. That the power given to the United States to pass bankrupt laws is not exclusive.
"2. That the fair and ordinary exercise of that power by the States does not necessarily involve a violation of the obligation of contracts, multo fortiori of posterior contracts.
"3. But when in the exercise of that power the States pass beyond their own limits, and the rights of their own citizens, and act upon the rights of citizens of other States, there arises a conflict of sovereign power, and a collision with the judicial powers granted to the United States, which renders the exercise of such a power incompatible with the rights of other States, and with the constitution of the United States."
And afterwards, in delivering the opinion of the court in the case of Boyle v. Zacharie and Turner, Mr. Justice Story says:  "The ultimate opinion delivered by Mr. Justice Johnson in the case of Ogden v. Saunders, 12 Wheat. 213, 358, was concurred in and adopted by the three judges who were in the minority upon the general question of the constitutionality of State insolvent laws, so largely discussed in that case. It is proper to make this remark, in order to remove an erroneous impression of the bar, that it was his single opinion, and not of the three other judges who concurred in the judgment. So far, then, as decisions upon the subject of State insolvent laws have been made by this court, they are to be deemed final and conclusive."
To the first two propositions maintained in the opinion of Judge Johnson, thus sanctioned and adopted, I entirely assent. But when the two clauses in the constitution therein referred to are held to be no restriction, express or implied, upon the power of the States to pass bankrupt laws, I cannot see how such laws can be regarded as a violation of the constitution of the United States upon the grounds stated in the third proposition. For bankrupt laws, in the nature of things, can have no force or operation beyond the limits of the State or nation by which they are passed, except by the comity of other States or nations. And it is difficult, *311 therefore, to perceive how the bankrupt law of a State can be incompatible with the rights of other States, or come into collision with the judicial powers granted to the general government. According to established principles of jurisprudence, such laws have always been held valid and binding within the territorial limits of the State by which they are passed, although they may act upon contracts made in another country, or upon the citizens of another nation; and they have never been considered, on that account, as an infringement upon the rights of other nations or their citizens. But beyond the limits of the State they have no force, except such as may be given to them by comity. If, therefore, a State may pass a bankrupt law in the fair and ordinary exercise of such a power, it would seem to follow, that it would be valid and binding, not only upon the courts of the State, but also upon the courts of the United States when sitting in the State, and administering justice according to its laws; and that in the tribunals of other States it should receive the respect and comity which the established usages of civilized nations extend to the bankrupt laws of each other. But how far this comity should be extended would be exclusively a question for each State to decide for itself, by its own proper tribunals; and there is no clause in the constitution which authorizes the courts of the United States to control or direct them in this particular. It would be a very unsafe mode of construing the constitution of the United States, to infer such a power in the tribunals of the general government, merely from the general frame of the government and the grant to it of judicial power.
I propose, however, merely to state my opinion, not to argue the question. For since the year 1819, when the validity of these State laws was first brought into question in this court, so much discussion has taken place, and such conflicting opinions been continually found to exist, that I cannot hope that any useful result will be attained by further argument here. I content myself, therefore, with thus briefly stating the principles by which I think the question ought to be decided, and referring to Story's Conflict of Laws (edit. of 1841), § 335, and several of the sections immediately following, where the decisions in foreign courts of justice, as well as in our own, upon this subject, are collected together and arranged, and commented on with the usual learning and ability of that distinguished jurist
Mr. Justice McLEAN.
I assent to the affirmation of the judgment of the Circuit Court. How an act which impairs the obligations of contracts can be considered constitutional as regards subsequent contracts, and not prior ones, is not within my comprehension. The notion, that such a law becomes a part of the contract, is in my judgment fallacious. Whatever constitutes a part of the contract is inseparably connected *312 with and governs it, wherever it may be enforced. All other forms and modes of proceeding, which affect the contract, belong to the remedy.
An unconstitutional law has the same and no greater effect on subsequent than on prior contracts. If a State can, in the mode supposed, disregard the inhibitions of the federal constitution, there is no limit to the exercise of its powers. It has only to pass an act, however repugnant to the constitution, and, according to the doctrine advanced, it operates as a law upon all subsequent transactions by a presumed assent to its validity. This principle, if carried out, would effectually subvert all restriction on the exercise of State powers in the federal constitution.
Mr. Justice DANIEL.
In the decision just pronounced, so far as it affirms the judgment of the Circuit Court, I readily concur. I concur, too, in the opinion of the majority of the court, so far as it maintains the position, that the contracts sued upon in this case, being essentially New York contracts, could not be discharged by the insolvent laws of Maryland. But to any and every extent to which it may have been intended to assume that these contracts, if properly Maryland contracts,  that is, if they had been made in Maryland, and designed to have been there performed,  should not have been discharged by the insolvent laws of that State, enacted and in force prior to the contracts themselves, I am constrained to express my entire dissent. I hold it to be invariably just, that the law of the place where a contract is made, or at which it is to be performed, enters essentially into and becomes a part of such contract; and should govern its construction, whenever a departure from that law is not so stipulated as to establish a different rule by the contract itself. This principle of interpretation I deem to be in accordance with the doctrine of the writers upon the comity of nations, as we find it extensively collated by the late Justice Story in his learned researches upon the conflict of laws. This rule, moreover, I hold to be in no wise in conflict with the eighth section of the first article of the constitution of the United States, conferring upon Congress the power to establish uniform laws on the subject of bankruptcy; nor with the tenth section of the same article, which prohibits to the States the power of enacting laws impairing the obligation of contracts. On the contrary, it recognizes in the federal government, and in the governments of the States, the correct and complete distribution of powers assigned to them respectively by the constitution.
By a reasonable rule of interpretation, and by repeated adjudications of this court, it is held, that the mere investiture of Congress with the power to pass laws on the subject of bankruptcy would not, ipso facto, divest such a power out of the States. The withdrawing of the power from the States would be dependent upon *313 an actual exercise by Congress of the power conferred by the constitution, and upon the incompatibility between the modes and extent of its exercise with an exertion of authority on the same subject by the States. The mere grant of power to Congress, whilst that power remained dormant, would leave the States in possession of whatever authority appertained to them at the period of the adoption of the constitution. These conclusions are in entire harmony with the decisions of this court in the case of Sturges v. Crowninshield; in that of Ogden v. Saunders, so far as the latter has been comprehended; for whilst it would be presumptuous not to ascribe any perplexity in this respect rather to my own infirmity than to a defect in the work of much wiser men, I must be permitted to say, that I have great difficulty in reconciling the case of Ogden v. Saunders with other decisions of this court, or in reconciling it even with itself. These conclusions, too, are in accordance with the very perspicuous opinions of Justices Washington and Thompson in the case last mentioned, and with the opinion of Justice Story in that of Houston v. Moore. Yet, if it be asked whether the States can now enact bankrupt laws within the sense and meaning of the power granted to Congress, I answer that they cannot. This reply, however, is by no means a deduction from the terms of the grant to Congress, as expressed in the eighth section of the first article of the constitution. That provision, I maintain, for aught that its language imports, leaves the States precisely where it found them, except so far as they might be affected by an actual exercise of authority by Congress. The States were found in the habitual practice of bankrupt systems; and as long as they should not be controlled in that practice by the action of Congress, they would have remained in possession of the right to continue their familiar practice, so far as the mere language of the eighth section of the first article of the constitution would affect them. But the constitution has proceeded beyond the potential restriction of the section just mentioned, and in so doing has abridged the power it found in practice in the States. It has, in section tenth of the same article, declared that no State shall have power to pass any "law impairing the obligation of contracts"; and in this inhibition, as I hold, is to be found the true limit upon the power of passing bankrupt laws, previously exercised by the States. Bankrupt laws, as understood at the time of adopting the constitution, and at all other periods of time, have been interpreted to mean laws which discharge or annihilate the contract itself, with all its obligations; and if the constitution had stopped short at providing for a discretionary power in Congress to enact such laws, and should have omitted any restraint upon the States, having found the latter exerting the power of passing bankrupt laws, it would have left them, by the mere fact of this omission, still with the power, by retroactive legislation, of dissolving and abrogating contracts. By connecting the *314 power given to Congress to pass bankrupt laws with the inhibition upon the States contained in the tenth section of the first article, all power in the latter to enact bankrupt laws as laws operating upon contracts previously existing has been taken away. But a power to discharge a contract made under a system of laws established and known to all, as public laws are inferred and indeed are necessarily admitted to be,  laws which may permit, nay, which under certain circumstances may command, such discharge,  presents a wholly different aspect of things,  one implying no bankrupt power, no power that is retroactive, and incompatible with either the legal or moral obligations involved in the contract; an aspect of things which, so far from authorizing an infringement, insists upon a fulfilment, of the contract, an exact compliance with its true obligations. To prevent this, then, would be to impair the obligations of the contract, to set up some new and retroactive rule for its interpretation, and thereby to inflict a wrong on a portion, if not on all, of the contracting parties.
To carry into effect the obligations of parties is the perfect right of communities of which those parties are members, and within which their obligations are made, and within which it may have been stipulated that they should be fulfilled; the enforcement of obligations, when intended to be performed according to the laws of other communities, constitutes a right and a duty recognized by the comity existing amongst all civilized governments. The case under consideration being one of a contract, which, though made in Maryland, was to be performed in the State of New York, the Circuit Court decided very properly that it could not be discharged by the insolvent laws of Maryland. But to prevent a misapprehension of the grounds on which this decision of the Circuit Court is approved, by myself, at least, and that, by assenting to that judgment, I may not hereafter be considered as concluded from an application of what is deemed the correct principle, when a case proper for its application may arise, the aforegoing explanation has been deemed proper.
Mr. Justice WOODBURY.
The judgment which has just been pronounced meets with my concurrence; but I have the misfortune to differ as to some of the views that have been expressed in rendering it.
As a matter of fact, the merchandise which is set out as the ground of action in the declaration in this case was sold in New York, by a citizen resident and doing business there, and the note given for it and offered in evidence was delivered to him there. Consequently, in point of law, the contract must be deemed a foreign one, or, in common parlance, a New York, and not a Maryland, contract. 6 Peters, 644; 3 Wheat. 101, 146; 3 Met. 207; 3 Johns. Ch. 587.
*315 The lex loci contractûs, which must govern its construction and obligations, is therefore the law of New York, unless on its face the contract was to be performed elsewhere. This is the rule in almost every country which possesses any civilized jurisprudence. 16 Johns. 233; 3 Caines, 154; Story on Bills of Exchange, §§ 146, 158, 168; 2 Barn. & Ald. 301; 1 Barn. & Cres. 16; Story's Confl. of Laws, §§ 272-329; 5 Clark & Fin. 1-13; 13 Mass. 1; 6 Cranch, 221; 6 Peters, 172; 7 ibid. 435; 8 ibid. 361; 13 ibid. 65; Peters's C.C. 302; 4 Dall. 325; Baldwin's C.C. 130, 537; 2 Mason's C.C. 151. See more cases, in Towne v. Smith, 1 Wood. & Min. 115.
As a question, then, of international law, without reference to any constitutional question, such a contract and its obligations cannot be affected by the legislation of bankrupt systems of other States. It is understood that the whole court concur in the opinion, that this reasoning and these decisions would be sufficient to dispose of the present case without going into other questionable matters; and, accordingly, no expression of approbation or disapprobation of former decisions in this tribunal, concerning bankrupt discharges, seems to have been necessary on this occasion.
But as the majority of the court have deemed it proper to express some opinions upon them, it devolves on me the necessity of stating very briefly and very generally two or three of my own in relation to this subject, which in some respects do not accord with those of the majority.
What has been and what has not been decided heretofore in respect to the operation of insolvent and bankrupt discharges, in the various cases which have come before this court, it is somewhat difficult to eviscerate, amidst so many conflicting and diversified views among its judges. But without going into an analysis of them now, and without stating in detail how far my individual opinions coincide or differ with what is supposed to have been adjudicated in each case, I would say, that, independent of any binding precedents, the true rules on this subject seem to me to be these.
1. That the States possess a constitutional right to pass laws, whether called insolvent or bankrupt, discharging contracts subsequently made, provided no concurrent legislation by Congress exists at the same time on the subject, and that such laws cannot be considered as impairing the obligation of contracts, which are made under and subject to them, and when Congress is expressly empowered by the constitution to pass similar laws. 12 Wheat. 23; Bronson v. Kinzie et al., 1 Howard, 311; 2 ibid. 612.
2. That such laws are to be regarded as it a part of the subsequent contract, incorporated into it; and hence, that the contract, being construed according to the lex loci contractûs, should be discharged by a certificate of bankruptcy given to the obligor in the State where the contract was made and was to be performed. *316 And this whether the action on it is brought in that State or another, or in the courts of the United States or those of the States, and whether the obligee reside in that States or elsewhere. Considered as a part of the contract itself, it is inseparable from it, and follows it into all hands and all places. 5 Mass. R. 509; 13 ibid. 4; 13 Pick. 60; 3 Burge's Col. & For. Laws, 876; 3 Story's Conflict of Laws, §§ 281-284; 2 Kent's Com. 390; 2 Mason's C.C. 175; Towne et al. v. Smith, 1 Wood. & Min. 115. And though in other States and in other forums it may be a matter of comity merely, in one sense of the word, to respect and enforce foreign contracts and their obligations, yet courts will always do it as right whenever the contracts are valid at home, and not immoral or against public policy elsewhere. 1 Dall. 229; 3 ibid. 369; Story's Confl. of Laws, §§ 331-335; 3 Burge's Col. & For. Laws, 876, 925; 2 Kent's Com. 392; 4 D. & E. 182; 5 East, 124; 2 Hen. Bl. 553; 1 Knapp's P.C. 265; Adams v. Storey, Paine's C.C. 79.
3. That the ancient State insolvent laws, which were often called here "poor debtor's acts," and in England "lord's acts," and usually discharged only the body from imprisonment, instead of the contract (2 Tidd's Practice, 978; 6 D. & E. 366), were and still are constitutional, whether they apply to future or past contracts. Because they do not interfere at all with the debt due, the contract itself, or its obligations, but merely the remedy on it, or the form of legal process, and thus they should govern in that respect no foreign forums, but merely its own courts, as the local and territorial tribunals who issue the precept or process. 4 Wheat. 112, 122, 209; 6 ibid. 131; 12 ibid. 213, 272; 2 Kent's Com. 392; Adams v. Storey, Paine's C.C. 79; Campbell et al. v. Claudius, Peter's C.C. 484; 4 Wash. C.C. 424.
Without feeling justified on this occasion in going more at large into these questions, and some others of an interesting character connected with them, I may be permitted to add, that these rules seem to me to have in their favor over some others at least this merit. They give full effect to State powers and State rights over this important matter, when not regulated by Congress. They produce uniformity among the State and the United States courts. They conform to the practice in other countries, and are easily understood and easily enforced.

Order.
This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Maryland, and was argued by counsel; on consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be and the same is hereby affirmed, with costs and damages, at the rate of six per centum per annum.