Mr Justice Thompson,
dissenting.
This is the first time this court has been called upon to give a construction to the act of congress of the 19th of May 1828, Sess. Laws 56. And the rule? and principles adopted by the circuit court, and which appear to be sanctioned by this court, when carried out to their full extent, appear to me to be such an innovation, upon what has been heretofore understood to be the law by which the courts of the United States were to be governed, as could not have been intended by congress by the act of 1828. It is giving to the courts die power, by rule of court, to introduce and enforce state insolvent systems.
It authorizes the courts to abolish all remedy which a ere- - ditor may have against the body of his debtor who has been discharged under a state insolvent law.. And if the courts have this power, they have the same power over a fieri facias, and to exempt all property acquired after the discharge of the insolvent from the payment of his antecedent debts; if such be the state law. The act is general, extending to writs of execution, and all other final process. And in'addition to this, it alters the whole law of remedy against bail, in such cases. A capias ad satisfaciendum against the principal is an indispensable preliminary step to a prosecution against the. bail; and if the court has a right to order, that no capias ad satisfacien-dum shall be issued, it is taking from the creditor all remedy against the bail. To say that an execution may be taken out, but shall not be executed upon the party, is a mere mockery of *364 justice. ■ The constitutionality of the insolvent law of Ohio is not drawn in question; and whether as a measure of policy, it is not wise to abolish imprisonment for debt, is not a question which we are called upon to decide.
As between the citizens of Ohio, and in their own courts, they have full power to adopt such course in this respect as the wisdom of their legislature may dictate. But the present is a question between the citizens of that state, and the citizens of another state. And that made the great and leading dis*-tinction adopted by this court in the case of Saunders v, Ogden, 12 Wheaton 531. And, indeed, it was the very point upon which that .cause turned. And if the practical operation of the act of 1828 is to be what is now sanctioned by this court, it is certainly overruling that decision. So.far as that goes, I can have no particular objection, as I was in the minority in that case. But this case involves other important considerations: It is an action brought by citizens of the state of New York, against citizens of the state of Ohio, upon a recognizance of bail. The pleadings in the cause terminated in a demurrer to the plea; and the judgment of the court sustained the validity of the plea, and defeated the plaintiffs’ right of recovery. A brief statement of the facts as disclosed by the record will aid in a right understanding of the questions that are presented for consideration. ■ The defendant Richard Haughton became special bail for Joseph Harris and Cornelius V. Harris in a suit brought against them by the plaintiffs in this cause. On the 12th day of October 1831, a capias ad satisfaciendum was issued against them on the judgment which had been recovered for 2846 dollars 56 cents. This capias ad satisfaciendum was returned Not found, at the December term 1831 'of the circuit court. This execution, it is to be presumed, was returnable on the first day of the term, which is according to the ordinary course of proceedings.
At the same December term 1831, the rule of court, set out in the plea was adopted; which orders and directs, that no person, either under mesne or final process, shall be kept in prison, who, under the insolvent law of the state, has for such demand been released from imprisonment. The plea alleges, that Cornelius V. Harris, one of the defendants in the original suit, was, at the February term 1831 of the court of common *365 pleas for Hamilton county, in the state of Ohio, ordered1 and adjudged to be for ever thereafter protected from arrest or imprisonment for1 any civil action, or debt, or demand, in the schedule of his debts delivered to the commissioner of insolvents ; among which was the judgment above mentioned. The plea also alleges, that a like discharge was given to the other defendant, Joseph Harris, at the February term 1832 of the same court. So that it appears, that the rule of court, and the discharge of one of the defendants, took place after the bail was fixed in law by the return “not found” upon the ca. sa. against the defendants in the origirial suit. As against Joseph Harris therefore, a retrospective effect has been given to his discharge, and a vested 'legal right of the plaintiff thereby taken away, upon this demurrer to a special plea,-founded upon a particular rule of court specified in the plea ; it cannot, I should think, be claimed, that other rules of_ court have the notoriety of public laws, which the court is bound judicially to know and notice. Was the bail under these circumstances discharged, and could such matters be set up by way of plea in bar to the present action against the bail, are the questions to be considered ?
In the case of Saunders v. Ogden, the parties, as in the present case, were citizens of different stales ; and the decision of the court was, that as between parties of different states, the state insolvent laws had no application. Mr Justice Johnson, who delivered the opinion of the court, uses very strong language on this point, and which cannot be misunderstood. “All this mockery of justice,” says he, “and the jealousies, recriminations and perhaps retaliations which might grow out of it, are avoided, if the power of the states over contracts, after they become the subject exclusively of judicial cognizance, is limited to the controversies of their own-citizens. And it does appear to me almost incontrovertible, that the states cannot proceed one step farther, without exercising a power incompatible with the acknowledged powers of other states, or of the United States, and with the rights of the citizens of other states. Every bankrupt or insolvent system in the world must partake of the character of ajudicial investigation. Parties whose rights are to be affected are entitled to a hearing. But on what principle can a citizen of another state be forced into the courts of a state for this investigation 1 The judgment to be passed is to *366 prostrate his rights; and on the subject of these rights the constitution exempts him from the jurisdiction of the state tribunals, without regard to the place where the contract originated. In the only tribunal to which he owes allegiance, the state insolvent or bankrupt laws cannot be carried into effect. They have a law oftheir own on this subject: act of 1800, 3d vol. L. U. S. 301. The constitution has constituted courts professedly independent of state power in their judicial course; and yet the judgments of those courts are to be vacated, and their prisoners set at large under the power of the state courts, or of the state laws, without the possibility of protecting themselves from its exercise. I cannot acquiesce in an incompatibility so .obvious. No one has ever imagined that, a prisoner in confinement, under process from the courts of the United States, could avail himself of the insolvent laws of the staté in which the court sits. And the reason is, that those laws are municipal and peculiar, and appertaining exclusively to the exercise of state power, in that sphere in which it is sovereign ; that is, between its own citizens, between suitors subject to state power exclusively, in their controversies between themselves.” And in conclusion, he sums up the argument by saying, that “ when in the exercise of that power” (passing insolvent laws), “ the states pass beyond their own limits, and the rights of their own citizens, and act upon the rights of citizens of other states ; then arises a conflict of sovereign power, and a collision with the judicial .powers granted to the United States, which renders the exercise of such a power incompatible with the rights of other states, and of the constitution of the United States.”
I have been thus particular in quoting the very language of the court, that it may speak for itself. And that it was adopted in its fullest extent is evident, by what fell from the court in the case of Boyle v. Zacharie and Turner, 6 Peters 643. “ The ultimate opinion,” say the court,<£ delivered by Mr Justice Johnson in the case of Ogden v. Saunders, was concurred in and adopted by the three judges who were in the minority upon the general question of the constitutionality of state insolvent laws, so largely discussed in that.case. It is proper to make this remark, in order to remove an erroneous impression of the bar, that it' was his single opinion, and not of the three other *367 judges wlio concurred in the judgment. So far, then, as déci-sions upon the subject of state insolvent laws have been made by this court, they are to be deemed final and conclusive.” The decision, in that case, turned exclusively upon the point, that state insolvent laws did not apply to suitors in the courts of the United States. And the emphatic language is used, “no-one has ever imagined that a prisoner in confinement under process from the courts of the United States, could avail himself of the insolvent laws of the state in which the court sits.” Apply this principle to the case now before the court. A capias ad satisfaciendum was in the hands of the marshal against the Harris’s, the defendants in the original suit. .Suppose the marshal had arrested them, (as was his duty to do, if they could be found) and put them in confinement. No one, say the court, could imagine, that they could avail themselves of the state insolvent law. But that is the very thing which the plea in this case does set up, under the authority of the rule of court, that no one shall be kept imprisoned who has been discharged under the insolvent law of the state; and it is the very thing that has proved available, to deprive the plaintiffs of a recovery in this case.
The case of Boyle v. Zacharie and Turner, was decided in the year 1832; and the enacting clause of the act of congress of 1828, could not have been supposed to change the principles adopted in Ogden and Saunders. If that act is to govern and control the case now before the court, it must be by virtue of the rule which has been adopted by the circuit court of Ohio. What is the law of 1828 1 It declares, “that writs of execution and other final process, issued on judgments and decrees rendered in any of the courts of the United States, and the proceedings thereupon, shall be the same, except their style, in each state, respectively, as are now used in the courts of such state, &c. provided, however, that it shall be in the power of the courts, if they see fit in their discretion, by rules of court, so far to alter the final process in said courts, as to conform the same to any change which may be adopted by the legislatures of the respective states for the state courts.” A capias ad satisfaciendum was an execution in use in the courts of the state of Ohio, in the year 1828, when the act in question was passed. It was, therefore, adopted as a writ to be used'in tiie courts of the United States.
*368 But it is said that the act adopts, • also, the proceedings thereupon. It does so. But what- is to be understood by proceedings ? Can this in any just sense be satisfied by prohibiting all proceedings on the execution % Proceedings, both in. common parlance and in legal acceptation, imply action, procedure, prosecution. And such- is the explanation given to the term proceedings, in the case of Wayman .v. Southard, 10 Wheaton 1. “It is applicable,” say the court, “ to writs and executions, and is applicable to every step taken, in a cause. It indicates the progressive course of the business, from its commencement to its termination.” If it is a progressive course, it must be advancing; and cannot be satisfied by remaining at rest. In the cases of Wayman v. Southard, and The Bank of The United States v. Halstead, 10 Wheaton, this term proceedings was applied to the mode and manner of executing the execution in the progress of obtaining satisfaction ; and the power of the court under the process act of 1792, to alter and add to the execution by extending it to lands. But no part of those cases contains an intimation, that proceedings to obtain satisfaction, implies or warrants an arrest and stopping all execution whatever of the process. If the enacting clause in this act does not forbid the execution of the capias ad satisfaciendum, as it certainly does not, could it be done by a rule of court under the proviso 1 1 think it could not. The proviso does not authorize any rule relative to the proceedings in the cause. The term is not used at all. It onty authorizes the court so far to alter final process, as to conform the same to that used in the state courts.
The rule set up in this jilea doesnotmakeanyaZteraiion, whatever, in the execution. That remains the sanie precisely as it was before ; and it only forbids the effect and operation of it. And if the rule is to be considered a part of the execution, and to be taken as if incorporated in the body of the writ, it would present a very singular process, commanding the marshal to take the body of the defendant, but forbidding him to keep the prisoner in confinement. Such incongruity cannot be attributed to this proviso. The rule, I think, is not authorized by this statute, and especially as it was adopted after the bail was fixed in law, by the return Not found, upon the capias ad satisfaciendum issued against the principals. That such a *369 return fixes the bail, is a settled rule of the common law. Courts have, ex gratia, extended the right to surrender, until the return of the writ or process against the bail: and perhaps in some instances, the right to surrender has been extended to a later period. But the contingency of not being able to make the surrender after the return of the capias ad satisfaciendum not found, is at the risk of the bail. And the relief of the bail in such cases is on motion, addressed to the favour of the court; and relief is granted, upon such terms as the circumstances of the case will warrant; and always upon payment of the cost of the suit against the bail. No stronger case upon this point can be put, than that of Davison v. Taylor, decided in this court, 12 Wheaton 604. “This,” say the court, “is a case of bail, and is to be decided by the principles of English law, which, the case finds, constitute the law and practice of Maryland on the subject. According to these-principles, tire allowance of the bail to surrender the principal after the return of a capias ad satis-faciendum, is considered as matter of favour and indulgence, 'and not of right; and is regulated by the acknowledged practice of the court. To many purposes the bail is considered as fixed by the return of the capias ad satisfaciendum ; but the court allow the bail to surrender the principal, within a limited period after the return of the scire facias against them ; as matter of favour, and not as matter pleadable in bar. In certain cases even a formal, áürrender has not been required ; when the principal was still living and capable of being surrendered, and an exon-eretur could be entered and the principal discharged immediately on the surrender: but the rale has never been applied to cases where the principal dies before the return of the scire facias. In such a case the bail is considered as fixed by the return of the capias ad satisfaciendum ; and his death after-wards and before the return of the scire facias, does not entitle the bail to an exoneretur: the plea is therefore bad.”
This case would seem to put at rest the question as to the manner in which the bail is to avail himself of any matter, which entitles him to relief, when application is made after the return of the capias ad satisfaciendum, — that it must be by motion and hot by plea in bar. But if this was pleadable, the plea now in question is defective. It does not allege a surrender of the principals, or that an exoneretur has been entered.' *370 It may be admitted that the bail would have been entitled to relief, on motion to the court for that purpose. But this will not sustain the plea, according to the doctrine of the case just referred to, of Davison v. Taylor. But it may be questionable whether the bail would have been relieved' in this case on motion. Such ah application is seldom, if ever, granted; unless the matter upon which the motion is founded, arose before the bail is fixed in law ; viz. before the return of the capias ad satisfa-ciendum. 1 Caines’s Rep. 10. In this case one of the principals ■ was not discharged, until several months after the return of the capias ad satisfaciendum. ' And this appears upon the record. In the case of Olcott v. Lilly, 4 Johns. 408, Chief Justice Kent says, there is no case in which the death of the principal, after the return and filing of the capias ad satisfaciendum, has been allowed as ground for the relief of the bail. All the cases agree that after the bail are fixed, de jure, they take the risk of the death of the principal. The attempt for relief has frequently been made, and as often denied. That the time which is allowed the bail ex gratia, is at their peril, and they must surrender. That there are many cases where the bail have been relieved on motion. But, in these cases, the event upon which the bail has been relieved happened before the bail became fixed. That, in cases of insolvency, time has been allowed the bail ex gratia to surrender, to prevent circuity of action. But there is no intimation that such insolvency could be pleaded in bar. Indeed its being allowed ex gratia, according to the language of all the cases, is conclusive to show that it could not be pleaded as a legal discharge of the bail. In the case of Chatham v. Lewis, 2 Johns. 103, the surrender was within eight days after the return of the writ against the bail, and the court ordered an exonere tur; saying'that, technically speaking, such surrender cannot be pleaded, and so is not de jure. The relief is on motion and not by plea, and the court always requires the costs in the suit or the recognizance to be paid. The same doctrine is fully settled in the English courts. In the case of Donally v. Dunn, 1 Bos. and Pul. 448, the position is laid down broadly, that bail cannot plead the bankruptcy and certificate of their principal in their own discharge. Lord "Eldon, however, observed that they did not mean to preclude any application for summary relief on (he part of the *371 bail. The same case came again'before the court', after leave to amend the plea had been obtained, 2 Bos. and Pul. 45, and was very analogous in its circumstances to the one now before this court. It was an action of debt on recognizance of bail; and the defendant pleaded the bankruptcy of the principal, very circumstantially. To which there was a general demur--rer and joinder.
■ ■ In support of the plea it was contended, as it has been in the case now before the court; that if the' bankruptcy and certificate was a legal discharge of the principal, it was also.a legal discharge of the bail, and if so maybe pleaded. To this it was answered, that the plea of bankruptcy could only be interposed by the bankrupt, himself: and'the bail, if entitled to any relief, must obtain it, by application to the summary jurisdiction of the court. . And this principle, was sanctioned by the court. Lord Eldon said, We do not mean to preclude any application for. summary relief oh the part of the bail. But on this record judgment must be given, for the plaiutiflf. That the' plea of bankruptcy is given to the bankrupt, to be made use. of as the means of discharging himself if he please. But there may be cases in which the bankrupt may not choose to make use of his certificate. And he cannot, through the medium of his bail,’ bé obliged to make use of his certificate, whether he will or not. It is the duty of the bail under.their recognizance to surrender .‘.lie -bankrupt; and it remains with the bankrupt himself to determine whether any use shall be made of the certificate. And Mr Justice Buller observed, that it is of importance to the public and to the profession, to put an end to attempts to introduce upon the record questions of practice, which cannot be considered as legal defences; but which belong to what may be called the equity side of the court. This action is brought for a legal demand, arising upon a debt of record, and the defendant is called upon to state a legal defence upon record, and not merely to say he has equity in his favour. He must either show a legal impossibility to perform .the condition of the .recognizance, or state something that will discharge him ; and he has done neither. These cases are abundantly sufficient to show that it is a well settled rule of law, that the bail cannot set up by plea in bar, the matter contained in the plea now in question. But if *372 available at all, it must be by motion. true, as Mannin v. Partridge, 14 East 599, the bail are not completely and definitively fixed, by the return of the capias ad satisfaci-endum. They have, by the indúlgence of the court, time to. surrender the principal, until the appearance day .of the last scire facias. But. this- was an application for relief on motion, and addressed to the favour and indulgence of the court; and.no intimation is given that it might be pleaded as matter of., right. And it is not, I believe, pretended, that any rule of court had or could authorize such matter to be pleaded. The relief of bail by the surrender of their principal is matter of practice, and may be regulated by rules of court. And the acts of the legislature of Ohio, or the decisions of their courts on this subject, can have nó binding force on the courts of the United States, or regulate their practice, any farther than they have been adopted by the court. And I do not understand that any rule of the circuit court professes to do more than extend the time for the surrender, until the return day of á second scire facias against the bail. But the mode of relief after the bail are fixed in law, must be by an application to the .favour of the court; and cannot, if the cases to which I have referred be law, be pleaded in bar. The cases of Wayman v. Southard, and the Bank of the United States v. Halstead, 10 Wheaton, establish, most clearly and explicitly, that a state legislature cannot, by virtue of any original, inherent power they have, arrest or control the proceedings of the courts of the United States; or regulate the conduct of the officers of the United States in the discharge of their duty. The doctrine of this court always has been, that executions issuing out of the courts of the United Slates, are not controlled or controllable in their general operation and effect, by any collateral regulations which the state- laws have imposed on the state courts to govern them'. That such regulations are exclusively addressed to the state tribunals, and have no efficacy on the courts of the United States; unless adopted under the authority of the laws of the United States. And it appears to me, that by no sound and just construction of the act of coiigress of 1828, can .the insolvent law of Ohio be considered as adopted by it; or as-giving the circuit court the power to adopt it by rule of court; withoutoverruling the case of Saunders v. Ogden; *373 nor without giving to the term proceedings, a meaning not warranted in common parlance, or in legal acceptation. But whatever might have been the power of the circuit court to relieve the bail it} this case, on motion; if such application had been made; I feel great confidence in saying, that the bail cannot avail himself of the matters set up, by way of' plea in bar to the action ; and that the plaintiff was entitled to judgment upon the demurrer.