Mr Justice Baldwin,
dissenting.
As I.fully concur in opinion with Judge Thompson,- in all the views which he has taken of this ca.se, it would be unnecessary for me to do more than express-such concurrence; but the course of adjudication which has prevailed in the circuit .court of Pennsylvania, on the subject of the insolvent laws of the states of this union, since April 1831; renders it indispensable for me to do more than declare my dissent from the opinion of the court. In the case of Woodhull and Davis v. Waguer, the defendant had been discharged by the insolvent law of Pennsylvania; after which he was arrested on a capias ad satisfaciendum from the circuit court, on a judgment obtained there. An application was made for his discharge, which was refused by the court; and he was remanded- to custody, on the ground, that the debt, being payable,in New York, and the plaintiffs citizens of that state when the debt was contracted and when the defendant, was discharged by the insolvent law of .Pennsylvania ; such discharge was -wholly inoperative. Similar cases have since occurred in which that court have held the law to be settled, and do not suffer the question to be argued.
In coming to, and for four years adhering to this course of adjudication, the judges of that court did not act on their own opinion; they cbnsidered the law to have been settled by the final judgment of this court in Ogden v. Saunders, 12 Wheaton 369; and the case of Shaw v. Robbins, referred to in the note to the case: and as the.rule on which we proceeded was laid down by the authority of this court, we felt boutid to observe and enforce it, whatever may have been our views of it as individual judges, or as a circuit court.
But in so doing, we did not consider it as a question of prac *374 tice, the form and mode of proceeding^ in court, or the mere execution of its final process. We examined it as one of constitutional' law, directly involving the power of the states, to affect in any manner the rights of citizens of other states, in enforcing the performance of contracts in the circuit courts of the United States.. And when we found that the third proposition laid down by Judge Johnson in Ogden v. Saunders, was considered as the established rule of this court; we at once submitted to its obligation as a guide to otir judgment. The declaration of Judge Stoiy, in delivering- the opinion of the court in Boyle v. Zachary and Turner, 6 Peters 643, was a direct affirmance of the proposition of Judge Johnson ; from which no member of the court dissented ; nor from the concluding paragraph of the sentence — “So far then as decisions upon the subject of state insolvent laws have been made by this court, they are to be deemed final and conclusive.”
. The third proposition of Judge Johnson, thus adopted as a principle of constitutional law, finally and conclusively, is this:—
“ But when, in the exercise of that power, the states pass beyond theirownlimitsand the rights of their own citizens, and act upon the rights of citizens of other states ; then arises a conflict of sovereign power, and a collision with the judicial powers granted to the United States, which renders the exercise of such a power incompatible with the rights of other states and with the constitution of the United States.”
A more important principle of constitutional law was never presented for the consideration of any judicial tribunal: and when, three years since, it was solemnly declared by this court that it wa's to be deemed as one which had become by its der cisions final and conclusive; the circuit court of Pennsylvania' did not feel at liberty to depart from it, but' followed it as a prescribed rule enjoined on their observance by paramount authority; deeming it their judicial duty. That court could not consider, that the effect of a discharge bv the insolvent law of Pennsylvania, on a debt due to a citizen of New York, and payable there, depended on a rule of court which it could make and unmake, at its discretion, from time to time, as a matter of practice.
With the cases of Ogden v. Saunders, Shaw v. Robbins, and Boyle v. Zachary, before them, they could not judicially *375 consider the question in any other aspect, than that so solemnly . declared by this court; presenting a conflict of sovereign power, a collision with the judicial powers of the union, and an exercise of a state' power incompatible with the rights of other states, and with-the constitution of the United States. When the final and conclusive decisions of this court had declared the law obnoxious to such objections, the circuit court had but one course t.o pursue — to declare it inoperative by the supreme law of the land ; which is as imperative on courts as suitofs, not as a guide to their discretion, but as the standard rule to direct their judgment.
A circuit court may be holden by a judge of this court, or in his absence by the district judge alone ; and either has the same power to make rules of court, as both.together. The question is simply this. The constitution — the rights of other states — the judicial power granted' to the United States as declared by this-court, are violated -by a state insolvent law. Yet a circuit court adopts, by a rule of its own, that state law as the rule of its decision, and renders a judgment according to its provisions; and this is the case before- us. The plaintiffs are citizens of New York; the defendants citizens of Ohio, sued in the circuit court of that district; by whose judgment the defendant is released from the obligation of .his contract^ as special bail; solély by the operation of a- law of Ohio adopted by a rule of court, when, in the absence of such a law, he would be absolutely bound to pay the debt demanded from him. That judgment is now affirmed by this court, on their construction of acts-of congress, whose titles are, to regulate processes in the courts of the United States; and the enacting clauses of which are confined to the “ forms of mesne process,” the forms and modes of “ proceedings in the-courts of the United States,” to writs of execution “and other final processes, and the proceedings thereupon.” A law which the legislative power of a state is incompetent to pass, because it.is, unconstitutional and void,, without a rule of court; has become valid and operative by the potency of judicial-power, exercised by any judge at his mere discretion. Thus removing all conflicts of sovereign power by the exercise of one, which becomes practically paramount to the final .and conclusive decisions of this court, the rights of other states, and the constitution of .the United States, as *376 judicially expounded. The judgment now rendered admits of no other conclusion ; and as I cannot admit for a moment the principle that the power of congress, if brought to bear directly by its most explicit enactments on. this subject, is competent to cure the objections to this law, which are fastened on -its vitals by the adjudications of this court in the cases alluded to; I cannot admit, that they can do it by the construction of a law which does not profess to touch the questions necessarily involved in this case; still less that it can be done by the rule of a court subordinate to the appellate jurisdiction of this.
If a state law is incompatible with the constitution of the union, it must be inoperative till the constitution is amended. The legislative and judicial power combined, cannot cure a defect which the supreme law'of the land declares to be fatal-to a state law; and when, by the solemn judgment of this court; it is declared, that a state law, adopted by a rule of the circuit court, is the rule of both right and remedy in a suit between a citizen of New York plaintiff, and a citizen of Ohio; I am judicially bound to consider, that it, is not open to any objections stated in the third proposition of Judge Johnson, in Ogden v. Saunders; or that that case, with that of Shaw v. Robbins, and Boyle v. Zachary, are now overruled. As the case on the record does not admit of the first alternative, but is directly obnoxious to' those objections; the inevitable result is, that the affirmance of this judgment must be taken to be the latter. The consequence is, that the effect of state insolvent laws on the citizens of other states is, for the present, an open question in the courts of the states and of the United States, notwithstanding any former decisions of this court in the cases referred to. So I shall consider it here and.in the circuit court, and answer to the profession and suitors for past errors, as those of adoption, not from choice, but a sense of judicial duty ; and being now absolved from an áuthority heretofore deerfied binding, shall act for the future on principle. That a paramount authority prescribing a rule-for my judgment, cannot leave my discretion uncontrolled ; when my judgments free, my discretion is not bound; and that what, in the exercise of my best judicial discretion, I feel bound to doin pronouncing the judgments of a circuit court, according to my deliberate conviction on the law' of the case, I cannot undo or ‘avoid doing, by any *377 rule of my own, in the adoption, construction or revocation - of which, my discretion is my only guide.
This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Ohio, and was argued by counsel; . on consideration whereof, it is ordered and adjudged by this court, that the judgment of the said circuit court in this cause be, and the same is hereby affirmed with costs. ■