## LETCHFORD v. CONVILLON and another.[1]

*(Circuit Court, E. D. Louisiana.  May, 1884.)*

STATE INSOLVENT LAWS—ALIEN RESIDENT.

    An alien living and doing business in Louisiana, with actual and constructive notice, is bound by insolvency proceedings under 'the laws of Louisiana. *Mississippi Mills Co.* v. *Ranlett,* 19 FED. REP. 191, distinguished.

At Law.

*Thomas Gilmore & Sons,* for plaintiff.

*Henry B. Kelly,* for defendants.

PARDEE, J.    The plaintiff, an alien residing and doing business in the state of Louisiana for the last 20 years, brings suit on notes and accounts against the defendants, citizens of Louisiana.    The defense is a discharge under the insolvency laws of Louisiana.    A jury has been waived, and the cause submitted to the court.    There is no dispute about the facts.    The defendant contracted the debt sued for, and the plaintiff is entitled to judgment, as claimed, unless the insolvency proceedings, and the discharge granted therein, operate a legal discharge from the obligation.    The insolvency proceedings are in the main regular.    The only objections pointed out are that the judge did not set the day for the meeting of creditors, but left the notary to set it, (see section 1789, Rev. St. La., and article 3087, Rev. Civil Code,) and that Robert S. Perry, attorney of insolvents, also acted as attorney in fact of several creditors, thus representing inconsistent and contradictory interests.    Neither of these irregularities can avoid the proceedings nor be the subject of inquiry collaterally. The record shows the notice to plaintiff as provided by law, and the evidence here shows actual notice.    The debt sued for was contracted since the insolvency laws were in force.    The question for decision, then, is whether an alien, living and doing business in Louisiana, with actual and constructive notice, is bound by insolvency proceedings under the laws of Louisiana.    It is difficult to assign any reason, in justice and equity, why such an alien creditor should not be bound and affected the same as any citizen of the state.    It certainly cannot be claimed as a right, that an alien can come here, live among us, carry on business under our laws, and all the time occupy a better position as a creditor, on debts created under our laws, than any citizen can have.    An alien, residing in Louisiana, has privileges, balanced by disabilities, resulting from his alienage, but he has no just claim to be a privileged creditor.

The effect and scope of discharges under state insolvent laws have been considered by the supreme court in many cases, but I do not find that this precise case has ever been presented.

*Ogden* v. *Saunders,* 12 Wheat. 213, though not the first case, is the

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

leading case on the subject. It was there held, as announced by Justice JOHNSON, (1) that the power given to the United States to pass bankrupt laws is not exclusive; (2) that the fair and ordinary exercise of that power by the states does not necessarily involve a violation of contracts, *mullo fortiori* of posterior contracts; (3) but when, in the exercise of that power, the states *pass beyond their own limits,* and the rights of their own citizens, and act upon the rights of citizens of other states, there arises a conflict of sovereign power and a collision with the judicial powers granted to the United States which renders the exercise of such a power incompatible with rights of other states, and with the constitution of the United States.

Following came the decisions in *Boyle* v. *Zacharie,* 6 Pet. 635, and *Suydam* v. *Broadnax,* 14 Pet. 67, from all of which Mr. Justice STORY announced the following propositions as the result: (1) That state insolvent laws may apply to all contracts within the state between citizens of the state; (2) that they do not apply to contracts made within the state between a citizen of the state and a citizen of another state; (3) that they do not apply to contracts not made within the state. See 2 Story, Const. § 1390; Story, Confl. Laws, § 341.

In *Baldwin* v. *Hale,* 1 Wall. 223, the authorities are again reviewed. The court, through Mr. Justice CLIFFORD, reiterates the conclusions in *Ogden* v. *Saunders,* and the propositions of Judge STORY quoted above, and adds:

"Insolvent laws of one state cannot discharge the contracts of citizens of other states, because they have no extraterritorial operation, and, consequently, the tribunal sitting under them, unless in cases where a citizen of such other state voluntarily becomes a party to the proceedings, has no legal jurisdiction in the case. Legal notice cannot be given, and consequently there can be no obligation to appear, and of course there can be no legal default."

*Baldwin* v. *Hale* is followed and indorsed in *Gilman* v. *Lockwood,* 4 Wall. 409. In these two cases the reasons for the rule are plainly laid down: (1) Because insolvent laws can have no extraterritorial effect; (2) because the tribunal sitting under them has no jurisdiction of the person of the excepted creditor.

In the case of *Crapo* v. *Kelly,* 16 Wall. 610, which decided that an assignment under a state insolvency law passed the title to a ship of the insolvent, though at the time on the high seas. Mr. Justice BRADLEY, in dissenting from the judgment giving insolvent laws such alleged extraterritorial effect, clearly states three fundamental rules or axioms, as laid down by Huber in his Prælectiones, which, in my opinion, throw light on the question in the present case, to-wit: (1) That the laws of every empire have force only within the limits of its own government, and bind all who are subjects thereof, but not beyond those limits; (2) that all persons who are found within the limits of a government, whether their residence is permanent or temporary, are to be deemed subjects thereof; (3) that the rules of every

empire, from comity, admit that the laws of every people, in force within its own limits, ought to have the same force everywhere, so far as they do not prejudice the powers or rights of other governments or of their citizens.

All the cases in relation to the force and effect of state insolvent laws decided by the supreme court, so far as cited either here or in briefs, have been cases between citizens of the United States, and in no one has the question or effect of residence, as distinct from citizenship, been raised or considered. In fact, as to citizens of the United States, residence in a state, other than temporary, draws to it citizenship of that state, so that it is incompatible to be a real resident of one state of the Union and at the same time a citizen of another. With aliens the case is different; for an alien may be a permanent resident of one of the states of the Union without ever becoming or intending to become a citizen. The duties and obligations of such resident aliens are well defined in the text-books. They are bound to the society by their residence, and they are subject to the laws of the state while they reside in it. Vattel, 102. They are bound to obey all general laws and are amenable in disputes with each other or with our citizens to the ordinary tribunals of the country. See 2 Kent, Comm. 64, and Wheat. Int. Law, (2d Ed.,) by Lawrence, 172 et seq., where, in note 59, in relation to foreigners generally, it is said: "Foreigners who, by an acquired domicile, participate in the commercial privileges of citizens or subjects of a country, must also share the inconveniences to which the latter are subject." Case of Laurent, Convention of 1853, p. 158.

There is a distinction between domiciled aliens and visitors in or passengers through a foreign country, and it affects the rights and obligations of the parties under the local law. See Phill. Int. Law, (2d Ed.) 6. The present case is that of an alien domiciled in Louisiana, who is bound by its laws, is amenable to its tribunals, and who participates in the commercial privileges of its citizens; a contract made in Louisiana, under its laws, with its citizens, and to be executed in its territory; and insolvency proceedings, with legal and actual notice, wholly within proper territorial limits, and in violation of no constitutional rights.

The supreme court of the United States has never, apparently, had such a case before it, and that court has never decided that in such a case the insolvent laws of a state would not be binding and effective. None of the principles declared in the many cases decided, and as formulated in the different cases supra, would justify holding the insolvency proceedings in this case not binding; but, rather, they seem to justify the contrary ruling. Mr. Justice CLIFFORD's reasons in Baldwin v. Hale, and Mr. Justice BRADLEY's propositions in Crapo v. Kelly, certainly point to the validity of the insolvency proceedings as against the plaintiff here. And to the same purport are the distinguished jurists to whose works reference has been made. And I

find in Wharton's Confl. Laws, § 523, this doctrine: "The discharge under a state insolvent law of a debt arising on a contract made and to be performed in that state between parties residing there is good everywhere." And to this state of circumstances, sufficient for Mr. Wharton, we find that the tribunal sitting under the insolvent law has territorial jurisdiction over the creditor, and through legal notice the creditor is made a party and the jurisdiction made complete, it would seem there should be no question as to the universal efficacy of the discharge.

The case of *Von Glahn* v. *Varrenne,* decided in the Eighth circuit, is a case on all fours with this, and therein Judge DILLON, Judge NELSON concurring, and Mr. Justice MILLER agreeing, held that state insolvent laws were as valid and binding on resident aliens as upon native-born citizens residing in the state. 1 Dill. 515. No circuit court case nor other case has been cited to the contrary.

The case of *Mississippi Mills* v. *Ranlett,* lately decided in this court, (19 FED. REP. 191,) does not touch the questions involved in this case.

I conclude, therefore, that in the present case the finding should be that the insolvency proceedings in the state court, in the case of *S. Convillon & Son* v. *Their Creditors,* wherein the plaintiff was made a party, and had notice, and wherein the said Convillon & Son were discharged from their debts, were valid and binding against the plaintiff, and operated to discharge the obligations herein sued on.

Judgments will be entered for the defendants.