HUGH BOYLE, COMPLAINANT AND APPELLANT v. JAMES W. ZACHARIE AND SAMUEL H. TURNER.

Z. and T. were merchants at New Orleans; B. was a resident merchant at Baltimore. B. in 1818, the owner of the ship Fabius, sent her to New Orleans, consigned to Z. and T. who procured a freight for her, and the ship having been attached for a debt due by B. in New Orleans, Z. and T. in order to release her, and enable her to proceed on her voyage, became security for the debt, and were obliged to pay the same by the judgment of a court in New Orleans. B. on being informed that Z. and T. had become security for his debt, approved of the same, and promised to indemnify them for any loss they might sustain. On the 23d December 1819, Z. and T. instituted a suit against B. in the circuit court of Maryland, for the recovery of the sum paid by them; and in the same month B. made application for the benefit of the insolvent act of Maryland, and received a discharge under the same. In May 1821, a judgment was rendered, by confession, in the suit in favour of Z. and T. for three thousand one hundred and thirteen dollars. And by consent of the parties a memorandum was entered of record: "this judgment is subject to the legal operation of the defendant's discharge under the insolvent laws of Maryland." By the court; the sole effect of this agreement is to save to the party whatever rights he may claim from the legal operation of the insolvent laws of the state of Maryland. It neither admits their validity, nor varies any rights of Z. and T. if they are entitled to them.

The agreement of B. to indemnify Z. and T. is not in contemplation of law a Maryland contract, but a Louisiana contract, by which B. undertook to pay the money in the place where Z. and T. resided, and not in Mar nd. The agreement of Z. and T. by which they procured the relief of the ship Fabius, was within their authority as consignees of the ship.

Such a contract would be understood by all the parties to be a contract made in the place where the advance was to be made; and the payment, unless otherwise stipulated, would also be understood to be made there. The case would in this aspect fall directly within the authority of Lanusse v. Barker, 3 Wheat. Rep. 101, 146.

The effect of a discharge under an insolvent law of a state, is at rest, so far as it depends on the antecedent decisions made by this court. The ultimate opinion delivered by Mr Justice Johnson, in the case of Ogden v. Saunders, 12 Wheat. 213, 258, was concurred in and adopted by the three judges who were in the minority on the general question of the constitutionality of state insolvent laws. So far then as decisions upon the subject of state insolvent laws have been made by this court, they are to be deemed final and conclusive.

APPEAL from the circuit court of the United States for the district of Maryland.

The bill filed by the appellant in the circuit court, stated, among other matters, that certain persons at New Orleans, trading under the firm of Vincent, Nolte & Co. having attached

[Boyle v. Zacharie and Turner.]

a brig belonging to the plaintiff, for a debt alleged by them to be due from said plaintiff, and which brig was consigned to the defendants, they the said defendants became security for the complainant on the said attachment, and the same having been ultimately decided against the complainant, the defendants paid the amount of the debt and expenses, amounting to three thousand one hundred and thirteen dollars and eighty cents. That on the 31st day of December 1819, the complainant obtained a final discharge under the insolvent laws of Maryland; and that afterwards, to wit, at the May term 1821 of the said circuit court, the defendants obtained a judgment against him for the said sum of three thousand one hundred and thirteen dollars and eighty cents, which judgment was entered upon the docket of said court, and agreed to be so received, subject to the legal operation of the discharge of the complainant under the said insolvent laws of Maryland. That execution had been sued out upon said judgment, and a writ of fieri facias had been placed in the hands of the marshal of the district, with directions to levy the same on property acquired by the complainant subsequently to his so obtaining his final discharge under the insolvent laws aforesaid, notwithstanding the said entry on the docket of its being confessed, and the confession being received, subject to the legal operation of the insolvent laws of Maryland. That besides the above facts, the defendants had also caused to be issued out of some court in Louisiana, an attachment upon the same debt or claim, against the complainant, and had laid the said attachment in the hands of persons indebted to the complainant in a large amount, which persons had refused to pay any part of the debts due by them to the complainant, in consequence of the laying of said attachment in their hands. The bill further stated, that by the provisions of the insolvent laws of Maryland, the complainant was entitled to be protected in the enjoyment of all property acquired by him since the date of his discharge under the said insolvent laws; except such as he might have acquired by gift, descent, or in his own right by bequest, devise or in any course of distribution; and that he had not since his discharge aforesaid, acquired any property in any of the modes thus specified. And further, that no property whatever of which the complainant was possessed, or to which he had any

[Boyle v. Zacharie and Turner.]

title, could be lawfully taken in execution under the said judgment, until a scire facias, containing proper averments of the acquisition of property by him in some one of the above mentioned modes, should be first issued, and the facts found to be true, either by confession, or by verdict of a jury, or otherwise according to law. And the bill prayed an injunction to be granted restraining and prohibiting the defendants from levying their execution: and the injunction to that effect was granted and served in due form.

The answer of the defendants, the appellees, stated that in the latter part of the year 1818, the complainant consigned to them at New Orleans a brig called the Fabius, and that they procured a freight for her to Liverpool; that after the cargo was actually laden on board of her, and she was about to sail, she was attached at the suit of Vincent, Nolte and Company, for a debt due to them by the complainant, and they, the defendants, and one Richard Relff, with a view to the benefit of the complainant, became security for the complainant and procured the release of the brig. The complainant approved of their acts, and undertook and promised to indemnify them for any loss they might sustain on his account. He afterwards gave the defendants a security for their liability, on the 1st day of May 1819.

The contract of indemnity was as follows: "I will see Messrs Zacharie and Turner paid whatever sum they have to pay Vincent, Nolte and Company, on account of a bill drawn by them on Hugh Boyle for disbursements of the ship Mohawk, original bill amount, five thousand four hundred and fifty-one dollars, of which the said Hugh Boyle paid three thousand dollars: the balance, the said Hugh Boyle contends, is not due to Vincent, Nolte and Co. When decided it shall be paid.

"Baltimore, 1st May 1810."

Hugh Boyle, the complainant, and Lemuel Taylor, soon after this circumstance, became insolvent, and the defendants afterwards paid to Vincent, Nolte and Company, the sum of three thousand one hundred and thirteen dollars and eighty cents, the amount of the judgment obtained by them against the complainant.

The defendants further stated that they afterwards instituted

[Boyle .v. Zacharie and Turner.]

a suit in the circuit court of the United States for the district of Maryland against the complainant, and obtained judgment against him for the amount so paid by them on his account, and proceeded thereon as stated in the complainant's bill. They say that the discharge of the complainant, by the insolvent laws of the state of Maryland, does not prevent their having the full benefit of the execution issued against the complainant's property, which has been acquired to a large amount since the discharge, all of which is liable for the payment of his debts.

The court granted the injunction as prayed for.

The answer admits the issuing of the attachments in New Orleans against the supposed property of the complainant, but states that the defendants in the same denied having any funds, and the proceedings were dismissed.

On the 19th of May 1829 the cause was set down for final hearing in the circuit court, and after argument it was decreed that the injunction should be dissolved; and the complainant's bill was dismissed. From this decree the complainant appealed to this court.

The case was argued by Mr Wirt, for the appellant; and by Mr Scott, for the appellees.

For the appellant it was contended:

1. That the appellant having been finally discharged under an insolvent law of the state of Maryland, passed and in force at a period of time previous to the making of the contract on which the suit at law was instituted, the injunction properly issued for restraining the further execution of process which had been levied upon property acquired by the plaintiff in error, subsequently to his said discharge; and that the decree passed upon a final hearing ought not to have dissolved said injunction.

2. That the insolvent law of Maryland, although it discharged both the person of the debtor, and his acquisitions of property made after his discharge under the law, is not a law impairing the obligation of contracts, so far as respects debts contracted subsequent to the passage of such law, provided such contract was to be executed or performed in the state of Maryland.

[Boyle v. Zacharie and Turner.]

3. That the bill and answer, and the proceedings filed with them, show that this contract was to be executed or performed in the state of Maryland; and that if these proceedings left the fact doubtful as to the place where the contract was to be performed, the injunction should have been continued for further proof.

4. That the court of chancery ought to have referred it to a commissioner to inquire and report, whether the complainant had or had not sustained injury by the attachments in New Orleans.

It was argued for the appellant, that the creditors of Boyle had submitted to the insolvent laws of Maryland by instituting the suit in that state, and by the terms in which the judgment was entered. Cited, Clay v. Smith, 3 Peters, 411.

Maryland was the place of the contract, or where, at least, it was to be performed. It was immaterial where the contract was made, if it was to be performed in Maryland.

As to the rule in fixing the place of the contract, Lanusse v. Barker, 3 Wheat.; De Wolf v. Johnson, 10 Wheat.; 7 Harris and Johnson, 399, were cited.

The contract in this case was not consummated until it was ratified by Boyle in Maryland. The consignees had become security for the consignor, an act not within the scope of their authority, and not binding on the consignor until he ratified it. As therefore the contract was not complete until confirmed, and as this was done in Maryland, it was a Maryland contract. If the appellees had not given the security to enable the brig to proceed, they would not have been liable for neglecting it.

This is the general rule as to all contracts growing out of correspondence. The place of payment contemplated was Baltimore. It was there that the same was to be carried into execution. Cited, Huberus de Conflictu Legum; 3 Dall. 374, note; Big. Dig.; 3 Mass. Rep. 77; 5 Mass. Rep. 509; 6 Mass. 157; 12 Mass. 4; 2 Mass. 84; 13 Mass. 153; 15 Mass. 354.

If the contract had been made in New Orleans, and so considered by the appellees, it would have borne interest at the rate of ten per cent. But the declaration states it to have been made in Maryland, and the rate of interest is that of Mary-

land. This is an admission, that it was a Maryland contract; and therefore to be regulated by her laws. This is equivalent to suing in a state court; and the question in the case will turn on the construction of the agreement by which the judgment was entered.

It is considered, that the taking of the judgment in the form in which it was entered, was an agreement that the parties should be bound by the law of Maryland; and would take only what that law gives, and according to the operation of the law.

It is a common practice in Maryland to take a judgment in a suit against one who has been discharged as an insolvent debtor, subject to the discharge. This is equivalent to that practice.

Mr Scott, for the appellees, assumed, that this case having been set down for final hearing by the complainant upon the bill and answers, the facts set forth in the answers must be taken as true; and he relied on the case of Leeds v. Marine Insurance Company of Alexandria, 2 Wheat. 380, 383.

He also contended, that the discharge of Boyle, under the insolvent laws of Maryland, did not affect the right of the plaintiffs at law to a judgment, or to an execution upon that judgment; because the act of the general assembly of Maryland, passed at December session 1816, ch. 221, sec. 5, which grants a final discharge to insolvent debtors, was a law impairing the obligation of contracts, and in violation of the first article, tenth section of the constitution of the United States. He relied upon the following authorities, Lanusse v. Barker, 3 Wheat. 102, 146; Consequa v. Fanning, 3 Johnson's Cases, 610; Thompson v. Ritcham, 8 Johnson's Rep. 189, 193; Blanchard v. Russell, 13 Mass. Rep. 18; Coolidge v. Poor, 15 Mass. Rep. 427, for the purpose of showing lex loci contractus: and also upon Sturges v. Crowninshield, 4 Wheat. 122, 197, 193; M'Millan v. M'Neill, 4 Wheat. 209; Farmers and Mechanics Bank of Pennsylvania v. Smith, 6 Wheat. 131; Ogden v. Saunders, 12 Wheat. 213, as to the validity of the discharge. And he contended that the memorandum made upon the judgment, "subject to the legal operation of the defendant's discharge under the insolvent laws of Maryland," gave to Boyle no other benefit from his discharge, than if it

had been pleaded at length; and that the discharge was no release to Boyle from the claim of the defendants.

He also contended, that the attachments, mentioned in the proceedings in the cause, formed no bar to the right of the plaintiffs at law to an execution upon their judgment; and he relied on Runer v. Marshal, 1 Wheat. 215; Bowne v. Joy, 9 Johnson, 221; Wash v. Durkin, 12 Johnson, 99. And in reply to the fourth point of the appellant's counsel " that the court of chancery ought to have referred it to a commissioner to inquire and report whether the complainant had sustained injury by the attachments at New Orleans," he showed by the answer of the defendants, that the proceedings in the attachment, laid in the hands of Breedlove, Bradford and Robinson, had been instituted at the instance and request of Boyle himself; and that, in that case, and also in the proceedings in the attachment against Ambrose Nelson, there were no funds in the hands of the garnishees liable to be affected by those proceedings. He also contended that Boyle had sustained no injury by those proceedings, and that there was no evidence upon which the appellant could rely, to show that he had been injured by them; and that even if he had been injured, that his remedy was before another tribunal, and not in a court of equity; and that he must establish the quantum of injury in a court of law before he could claim a set off on that account in a court of equity; and that the appellant was without any defence; and that the injunction was properly dissolved, and the bill dismissed.

Mr Justice STORY delivered the opinion of the Court.

This is an appeal from a decree in equity to the circuit court for the district of Maryland, dismissing the bill of the plaintiff, now appellant.

The material circumstances are as follows. Zacharie and Turner are, and at the time of the transactions hereafter to be stated were, resident merchants at New Orleans, and Boyle a resident merchant at Baltimore. In the year 1818, Boyle being the owner of the brig Fabius, sent her on a voyage to New Orleans, consigned to Zacharie and Turner, where she arrived and landed her cargo, and Zacharie and Turner procured a freight for her to Liverpool. After the cargo was put

[Boyle v. Zacharie and Turner.]

on board, and the brig was ready to sail, she was attached by process of law, at the suit of Messrs Vincent, Nolte and Co. of New Orleans, as the property of Boyle, for a debt due by him to them. Zacharie and Turner, with one Richard Relff, with a view to benefit Boyle, and enable the brig to perform her voyage, became security for Boyle upon the attachment, and thus procured the release of the brig. Upon information of the facts, Boyle approved of their conduct, and promised to indemnify them for any loss they might sustain on that account. Messrs Vincent, Nolte and Co. recovered judgment in their suit, and Zacharie and Turner were compelled to pay the debt and expenses, amounting to three thousand one hundred and thirteen dollars and thirty cents; and afterwards, on the 23d of December 1819, they instituted a suit against Boyle for the recovery of the same, in the circuit court of Maryland. On the 31st of the same month of December 1819, Boyle made application for the benefit of the insolvent act of Maryland, of 1816, ch. 228, and eventually received a discharge under the same. On the 1st of May 1821, judgment by confession was rendered in the suit, in favour of Zacharie and Turner, for the sum of three thousand one hundred and thirteen dollars and eighty cents, with interest from the 15th of November 1819, and costs of suit; and a memorandum was entered of record, by consent of the parties, as follows, "this judgment subject to the legal operation of the defendant's discharge under the insolvent laws of Maryland." The judgment having remained unexecuted for more than a year, it was revived by a scire facias; and writs of fieri facias were issued, and renewed from time to time, until the 12th of December 1827, when a fieri facias was delivered to the marshal, who levied it on the ship General Smith, belonging to Boyle, on the 31st of March 1828; and returned it to the May term of the circuit court of the same year.

The bill of the plaintiff was filed on the 7th of April 1828, and stated most of the preceding facts; and prayed for an injunction to the further proceedings to enforce the execution of the judgment, and for general relief. The grounds relied on by the plaintiff, for this purpose, were first, that his property is exempted from the levy, by his discharge under the insolvent act; secondly, that he is entitled to credit for certain com-

missions accruing to him for certain business done for Zacharie since the judgment, and agreed to be deducted therefrom; and thirdly, for the amount of losses sustained by the plaintiff in consequence of Zacharie and Turner having caused certain attachments for the same debt to be issued in Louisiana against the property of the plaintiff in the hands of certain debtors of the plaintiff in that state. An injunction issued on the bill, on the 8th of the same April.

The answer of the defendants (now appellees) having come in, the cause was set down for a hearing on the bill and answer (by which the facts stated in the answer must be taken to be true); and it was decreed by the court that the injunction be dissolved, and the bill dismissed without costs. From that decree the present appeal has been taken to this court.

The first point presented for argument, and indeed that which was the principal ground of the appeal, is as to the effect of the discharge under the insolvent act. This question is of course at rest, so far as it is covered by the antecedent decisions made by this court. The ultimate opinion delivered by Mr Justice Johnson in the case of Ogden v. Saunders, 12 Wheat. 213, 358, was concurred in and adopted by the three judges, who were in the minority upon the general question of the constitutionality of state insolvent laws, so largely discussed in that case. It is proper to make this remark, in order to remove an erroneous impression of the bar, that it was his single opinion, and not of the three other judges who concurred in the judgment. So far then, as decisions upon the subject of state insolvent laws have been made by this court, they are to be deemed final and conclusive.

It has been suggested that the memorandum of agreement accompanying the judgment, that it should be " subject to the legal operation of the insolvent laws of Maryland," ought to be deemed an acquiescence on the part of Zacharie and Turner, in the validity of that discharge, or at least a waiver of any claim in repugnance to it. We do not think so. The sole effect of that agreement is to save to the party whatever rights he may claim from the legal operation of those laws. It neither admits their validity, nor waives any rights of Zacharie and Turner, if they are unconstitutional.

It has in the next place been argued, that the contract upon

which the judgment is founded, is, in contemplation of law, a Maryland contract; and not a Louisiana contract; that Boyle undertook to pay the money in the place where he resided, and not in the place where Zacharie and Turner resided. Our opinion is, that this argument cannot be maintained. We do not admit, that the original undertaking of Zacharie and Turner in giving security in behalf of Boyle, was an unauthorised act, and beyond the scope of their just authority, as consignees of the Fabius. It was an act obviously done for the benefit of Boyle, and indispensable to enable the vessel to perform her voyage; and naturally implied from the relation of the parties, as owner and consignees. It must have been intended by the owner, that the consignees were to be at liberty to do any act for his benefit which was or might be required in order to despatch the vessel on the voyage. And Boyle himself seems to have admitted this to be true; for in the answer of Zacharie and Turner (which is evidence in the cause), it is expressly stated that Boyle, "so far from disapproving of the acts of these defendants, as above stated, thanked them for their prompt and correct management of his business, and undertook and promised to indemnify them from any loss which they might sustain on his account." Now that could scarcely be deemed a prompt and *correct* management of the business of the principal, which was wholly beyond the scope of the authority delegated to the agents. In this view of the matter, the contract of indemnity would clearly refer for its execution to Louisiana; as much so as if Boyle had authorised Zacharie and Turner to advance money there on his account, for which he would repay them. Such a contract would be understood by all parties to be a contract made in the place where the advance was to be made; and the payment, unless otherwise stipulated, would also be understood to be made there. The case would, in this aspect, fall directly within the authority of Lanusse v. Barker, 3 Wheat. Rep. 101, 146; see also Coolidge v. Poor, 15 Mass. Rep. 427; Consequa v. Fanning, 3 Johns. Ch. Rep. 587.

But if the contract had been unauthorized, and beyond the agency, still the subsequent ratification of the transaction by Boyle would have the same operation, according to the well known maxim, that subsequent ratification is equivalent to a

prior order; and when made, it has relation back to the time of the original transaction, and gives it as full a sanction as if it had been done under an original authority. The ratification of this contract by Boyle was complete and perfect; and he treated it as a Louisiana contract of indemnity, for his benefit, by which he was bound, and which he ought to discharge in that state.

As to the credit for commissions, that is no longer relied on; for the defendant's answer asserts distinctly that the amount has been already credited.

As to the attachments, it is not very easy to ascertain the grounds upon which Boyle attempts in his bill to assert an equity. Assuming that a bill would lie to have an equitable offset for unliquidated damages, occasioned by the misconduct of the creditors in not prosecuting such attachments with due diligence, where the debt has been lost by the insolvency of the garnishee in the intermediate period (on which we desire to be understood as expressing no opinion); still, there must be sufficient facts alleged in the bill to justify a presumption of loss. Now, in the present bill, there is no allegation whatsoever of any insolvency of the garnishees. The allegation as to one attachment is, "whereby your orator has been deprived of the benefit of any part of the debt, now due by the said Nelson (the garnishee), being somewhere about the sum of fifteen hundred dollars, besides interest thereon, from the said year, when the attachment aforesaid was laid, and which sum is as completely lost to your orator, as if it had been paid over to the said Zacharie and Turner; who, for aught your orator knows, may have actually recovered the whole of it in virtue of said attachment, and may have refused to give credit for the same." And as to the other attachment, the allegation is, " that they also attached property belonging to your orator, which was in the hands of Messrs Breedlove and Bradford (the garnishees), for which your orator has never received any credit, although it has been thus far completely lost to him, amounting, as he verily believes, to the sum of, &c. &c." So that the whole gravamen is, that the attachments have hitherto prevented him from receiving the debts and interest due from the garnishees. Under such circumstances, where Boyle might at any time have relieved himself from the

effects of the attachment, by the payment of the debt due to Zacharie and Turner; and where he has himself acquiesced in the delay, without in any manner attempting to speed the suits; and where no connivance or indulgence is pretended to have existed in concert with the garnishees; and where there is no allegation in the bill itself, of any undue delay in prosecuting the attachments by the creditor, it is difficult to perceive any foundation on which to rest a claim for equitable relief. But the answer of the defendants shows still more forcible objections against the bill. This answer explicitly avers, that in both of the attachments the garnishees denied having any funds of Boyle in their possession, Nelson generally, and Breedlove, Bradford & Co. with the qualification, any funds liable to the attachment; and the suits were dismissed accordingly. Copies of the proceedings are annexed to the answer, which demonstrate (if it had been necessary), the result of the averment; but it must be taken to be true, as the hearing was upon bill and answer.

It is added in the answer that the suit against Breedlove, Bradford & Co. was commenced upon the information and *at the request of Boyle;* so that it was not *in invitum;* but was an arrest of his funds, upon his own suggestion, and with his own consent. Surely a suit in chancery cannot be maintained in a case so naked of all real equity. But it is said that the answer of the garnishees, Breedlove, Bradford & Co. admits that they are indebted to the plaintiff. But we must take that answer according to its terms and import; and if so, then the admission is qualified. It is as follows: "we do not consider ourselves in debt to Hugh Boyle, or to Hugh Boyle & Co.; we received of Hugh Boyle & Co. some property, which has been sold, and the proceeds, say twelve or thirteen hundred dollars, placed to their credit on our books; but one of the house holds a claim against Hugh Boyle & Co. for upwards of twenty-five hundred dollars, which amount he refused to admit as a credit to our partner, but was willing to close Hugh Boyle & Co.'s account, by charging him and crediting the partner with the balance due said Boyle, and in this way said balance was held to pay the claim." They add, in an answer to another interrogatory, "we have no property of the defendants in this case, nor do

[Boyle v. Zacharie and Turner.]

we know of any." Now, it has not been shown at the argument, that in a process of this sort, under the local laws of Louisiana, the debt due to one partner might not be a good defence for the garnishees; and certainly the court cannot presume it. And, upon general principles, there can be little doubt, that in a court of equity, in a suit by Boyle seeking relief, such a counter claim would or might, under circumstances, furnish a good defence, if not to the firm, at least to the creditor partner, to rebut the claim of Boyle against him. Where there is an express denial by the garnishees, setting up an equity of any property in their hands liable to the attachment, that allegation ought to be presumed to be supported by the local law applicable to the facts, until the contrary is explicitly established. But the decisive answer is, that as this suit was commenced at the request of Boyle, and as the garnishees did not admit that they had property liable to the attachment, the onus is on Boyle, to show, that, nevertheless, by the local law the attachment might have been enforced. He has failed to establish any such proposition.

Upon the whole, it is the opinion of the court, that the decree of the circuit court ought to be affirmed, with costs.

This cause came on to be heard on the transcript of the record, from the circuit court of the United States for the district of Maryland, and was argued by counsel; on consideration whereof, it is ordered and decreed by this Court, that the decree of the said circuit court in this cause be, and the same is hereby affirmed, with costs.