*307 Mr. Justice GRIER
delivered the opinion of the court.
This case comgs before us by a writ of error to the Circuit Court of the United States for the Maryland District.
Moffat & Curtis, merchants in New York, sold goods to Cook, who resided in Baltimore.- On a settlement of their accounts, Cook transmitted his notes to his attorney in New York, who delivered them to the defendants in error. After the notes fell due, Cook applied for and obtained the benefit of the insolvent laws of Maryland. By these laws the debtor, on surrender of his property, is discharged not only from imprisonment, but from his previous debts.
On the trial of»this case in the Circuit Court, the plaintiff in error pleaded this discharge, insisting, “ that the contract was -to be performed in Maryland, and governed by the laws of Maryland in existence at the time it was made ; and that, therefore, his dischárge under her laws was a good defence to the action.” The Circuit Court gave judgment for the plaintiffs, and the defendant prosecuted this writ of error.
That the contract declared on in this case was to be performed in Maryland, and governed by her laws, is a position which cannot be successfully maintained, and was, therefore, very properly abandoned on the argument here. For, although the. notes purport to have been madé at Baltimore, they were delivered in New' York, in payment of goods purchased there, and of course, were payable there and governed by the laws of that place. See Boyle v. Zacharie and Turner, 6 Peters, 635 ; Story’s Cónfl. of Laws, § 287.
The only question, then, to be decided at present, is, whether the bankrupt law of Maryland can operate to discharge the plaintiff in error from a contract made by him in New York, with citizens of that. State.
In support of the affirmation of this proposition, it has been contended, —
1st. “ That the State of Maryland having power to enact a bankrupt law, it follows as a necessary consequence, that such law must control the decisions of her own forums.”
2d. “ That the courts of the United States are as much bound to administer the laws of each State as its own courts.”
It has also been contended, that the case of Ogden v. Saunders, while itadmits the first proposition, denies the second, and that this court ought to reconsider the whole subject, and establish it on principles more consistent.
But we are of opinion, that the case of Ogden v. Saunders is not subject to the imputation of establishing such an anomalous doctrine, although such an inference might be drawn from some remarks of the learned judge who delivered the opinion of the court in that case ; the question, whether a State court would be justifiable in giving effect to a bankrupt discharge which the courts of the United *308 States would declare invalid, was not before the court, and was therefore not decided. Nor has such a decision ever been made by this court.
The constitution of the-United States is the supreme law of the land, and binds every forum, whether it derives its authority from a State or from the United States. When this court has declared State legislation to be in conflict with the constitution of the United States, and therefore void, the State tribunals are bound to conform to such decision. A bankrupt law which comes within this category cannot be pleaded' as a discharge, even in the forums of - the State which enacted it.
It is true, that as between the several States of this Union, their respective bankrupt laws, like those of foreign States, can have no effect in any forum beyond their respective limits, unless by.comity. But' it is not a .necessary consequence, that State courts can treat this subject as if the States were wholly foreign to each other, and inflict her bankrupt laws on contracts and persons not within her limits.
It is because'the States are not foreign to each other in every respect, and because of the restraint on their powers of legislation on the subject of contracts, and the conflict of rights arising from the peculiar relations which our citizens bear to each other, as members' of a common government,, and yet citizens of independent States, that doctrines have been established on this subject apparently inconsistent and anomalous.
Accordingly we find that when, in the case of Sturges v. Crowninshield, this court decided, “ that a State has authority to pass a bankrupt law, provided there be no act of Congress in force to establish' a uniform system of bankruptcy,” it was nevertheless considered to be subject to the further condition, “ that such law should not impair the obligation of contracts within the meaning of the constitution of the United States, art. 1, sec. 10.”
It followed, as á corollary from this modification and restraint of the power of the State to pass such laws, • that they could have no effect on contracts made before their enactment, or beyond their territory. , Hence, at the same term, th.e coiyt unanimously decided, in the case of McMillan v. McNeil, that a contract made in South Carolina was not affected by a bankrupt discharge in Louisiana, under a law made antecedently to the contract, although the suit was. brought in the Circuit Court of the United States for Louisiana. That case was precisely similar in. all respects to the one before us.
In the Mechanics’ Bank v. Smith, a discharge under a Pennsyl-. vania bankrupt, law was held not to affect a contract between citizens of that State, made previous to the passage of the law.
Next followed the case of Ogden v. Saunders, which has been made the subject of .so much criticism. In that case, Saunders, a' citizen of New York, drew bills on Ogdén in New York, which *309 Were accepted and protested there. Ogden was afterwards discharged under the insolvent laws of New York, passed previous to the contract of acceptance, and pleaded this discharge to an action brought against him in the District Court for Louisiana. A majority of the court there decided, —
1st. “ That a bankrupt or insolvent law of any State, which discharges the person of the debtor and his future acquisitions, is not a. law impairing the .obligation of contracts, so far as it respects debts subsequent to the passage of such law.”
■ 2dly. “ That a certificate of discharge under such a law cannot be pleaded in bar of an action brought by a citizen of another State.”
We do not deem it necessary, on the present occasion, either to vindicate the consistency of the propositions ruled in that case with the reasons on which it appears to have been founded, or to discuss anew the many vexed questions mooted therein, and on- which the court were so much divided. It may be remarked, however-, that the members of the court who were in the minority in the final decision of it .fully assented to the correctness of the decision of McMillan v. McNeil, which rules the present case.
The case of Boyle v. Zacharie, 6 Peters, 635, is also precisely parallel wjth the present. The contract declared on was made in New Orleans ; the defendant resided in Baltimore, and, on suit brought in the Circuit Court for Maryland, pleaded his discharge under the Maryland insolvent laws, and his plea was overruled.
So far, then, as respects the point now before us, this court appear to have always been unanimous ; and in order to- meet the views of the learned counsel for the plaintiff m error, we should be compelled to overrule every case heretofore decided on this most difficult and intricate subject. But as the questions involved in it have already received the most ample investigation by the most eminent and profound jurists, both of the bar and the bench, it may be well doubted whether further discussion will shed more light, or produce a more satisfactory or unanimous decision. .'
So far, at least, as the present case is concerned, the. court do not think it necessary or prudent to depart from the safe maxim of stare decisis.
The judgment of the Circuit Court is therefore affirmed.
Mr. Chief Justice TANEY.
.1 gave the judgment-in this case in the Fourth Circuit, because, sitting in an inferior tribunal, I felt myself'bound to follow the decisions of this court, although I could not assent to the correctness of the reasoning upon which they áre founded.- And I acquiesce in the judgment now given, since a majority'of the justices have determined not to consider the question upon the operation of the insolvent laws of the. States as altogether an open one ; and undoubtedly-, according to the decisions heretofore given, the judgment of *310 the Circuit Court ought to be affirmed. But, in my opinion, these decisions are not in harmony with Some of the principles adopted and sanctioned by this court, and therefore ought not to be followed.
The opinion delivered by Judge Johnson in,the case of Ogden v. Saunders was afterwards concurred in and adopted by a majority of the court in the case of Boyle v. Zacharie and Turner, 6 Peters, 643. And the subject has not since been brought to the attention of this court until the case now under consideration came before it.
The opinion of Judge Johnson is stated by him in the following words.
“.The propositions which I have endeavoured to maintain, in the opinion which I have delivered, are these : —
' “1. That the power given to the United States to pass bankrupt laws is not exclusive.
“ 2. That the fair , and ordinary exercise of that power by the States does not necessarily involve a violation of the obligation of contracts, multo fortiori of posterior contracts;.
’ “ 3. But when in the exercise of that power the- States pass beyond their own limits, and the rights of their own citizens, and act upon the rights of citizens of other States, there arises a conflict of sovereign power, and a collision with the judicial powers’ granted to-the United States, which renders the exercise of such a power incompatible with the rights of other States, and with the constitution of. the United States.”
And afterwards, in delivering tlfb opinion of the court in the case of Boyle v. Zacharie and Turner, Mr. Justice Story says : — “ The ultimate opinion delivered by Mr. Justice Johnson in the case of Ogden v. Saunders, 12 Wheat. 213, 358, was concurred in and adopted by the three judges who were in the minority upon the general question of the constitutionality of State insolvent laws, so largely discussed in that case. It is proper to make this remark, in order’to remove an erroneous impression of the bar, that it was his single opinion, and not of the three other judges who concurred in the judgment. .So far, then, as decisions upon the subject of State insolvent laws have been made by this court, they are to be deemed final arid conclusive.”
To the first two propositions maintained in the opinion of Judge Johnson, thus sanctioned and adopted, I entirely assent. But. when the two clauses in the constitution therein referred to are held to be no restriction, express or implied, upon the power of the States to pass bankrupt laws, I cannot see how such laws can be regarded as a violation of the constitution of the United States upon the grounds stated in the .third proposition. 'For bankrupt laws, in the nature of things, can have no force or operation beyond the limits of the State or nation by which. they are passed, except by the comity, of other States or nations. And it is diffi *311 cult, therefore, to perceive how the bankrupt law of a State can be incompatible with the rights of other States, or come into collision with the judicial powers granted to the general government. According' to established .principles of jurisprudence, such laws have always been held valid and binding within the territorial limits of the State by which they are passed, although they may act upon contracts made in another country, or upon the citizens of another nation ; and they have never been considered, on that account,' as an infringement upon the rights of other nations or their citizens.. But beyond the limits of the. State they have no force, except such as may be given to them by comity. If,, therefore, a. State may pass a bankrupt law in the fair and ordinary exercise of such a; power, if would seem to follow, that it would be valid and binding, not only upon the courts of the State, but also upon the courts of the United States when sitting in the State, and administering justice according to its laws ; and that in the tribunals of other States it should receive the respect and comity which the established usages of civilized nations extend to the bankrupt laws of each other. But how far this comity should be extended would be exclusively a question for each State to decide for itsélf, by its own proper tribunals ; and tpere is no. clause in the constitution which authorizes the courts of the United States to control or direct them in this particular. It would be a very unsafe mode of construing the constitution of the United States, to infer such a power in the tribunals of the general government, merely from the general frame of the government and the gn t to it of judicial power.
I propose, however, merely to state' my opinion, not to argue the question. For since the year 1819, when the validity of these State laws was first brought into question in this court, so much discussion has taken place, and such conflicting opinions been continually found to exist, that I cannot hope that any useful result will be attained by further argument here. I content myself, therefore, with' thus briefly stating the principles by which I think the question ought to be decided, and referring to Story’s Conflict of Laws (edit, of 1841), § 335, and several of the sections immediately following, where the. decisions in foreign courts of-justice, as well as in our own, upon this subject, are collected together and arranged, and commented on with the usual learning and ability of that distinguished jurist.