## SMITH v. BROWN.

If a plaintiff take the disclosure of a trustee, and then elect to try his liability by the jury, he is not required to put such disclosure in evidence on trial.

The plaintiff resided in Connecticut, the defendant in Massachusetts, and the trustee in this State. An assignment of the defendant's property had been made under the insolvent laws of Massachusetts, before service of the plaintiff's writ upon the trustee. The note in suit was made and payable in Massachusetts, and between parties residing there at the time of its date, but was transferred to the plaintiff before it was due:—*Held*, that the trustee must be discharged, and that it was immaterial whether the principal defendant had obtained his discharge in insolvency or not, if the proceedings prior to and including the assignment had been regular.

Though the trustee be discharged on the ground that the funds in his hands belonging to the principal defendant had vested in his assignee in Massachusetts, before the service of process upon the trustee, yet the plaintiff will be allowed his costs, against the trustee, if the latter received the property of the former, or did any act in relation thereto with intent to aid the defendant in defeating or delaying any creditor.

ASSUMPSIT. The writ was dated March 10, 1856, and served on the trustee the same day. The action was entered August term, 1856. At the January term, 1858, the principal defendant was defaulted. At the January term, 1859, the plaintiff elected to try the liability of the trustee, whose disclosure had been previously taken, by the jury. The plaintiff is described in the writ as of Hartford, Conn., the principal defendant of Lowell, Mass., and the trustee of Dover, in this county; and such were their respective residences at the commencement of the action and since. The trustee pleaded that he was not chargeable as trustee, nor indebted to the principal defendant; and upon this plea the proper issues were joined.

The plaintiff claimed to charge the trustee on two grounds: (1) as indebted to the principal defendant in the sum of $3314, and interest from July 2, 1855, for so much money by said trustee on that day had and received of the principal defendant to his use; and (2) as indebted to the principal defendant in the sum of $2500 and interest upon a draft drawn upon him for that sum, September 24, 1855, and by him on the same day accepted, originally payable

to P. Emery Aldrich, or order, and by him indorsed and transferred to the principal defendant.

Upon trial before the jury, the trustee insisted that the plaintiff was bound to put in evidence the disclosure of the trustee. The court ruled otherwise, and the trustee excepted.

It was proved by the testimony of the trustee, whom the plaintiff placed on the stand, that on the morning of July 2, 1855, the principal defendant placed in his hands, at Lowell, Mass., the sum of $3314, requesting him to keep it for him awhile; that subsequently, on the 24th day of September, 1855, he had accepted an order or draft drawn upon him by the principal defendant, payable to the order of P. Emery Aldrich, for the sum of $2500; and by P. Emery Aldrich, that he held this draft for the principal defendant, to whom it belonged, for two or three months after its date, and then transferred it to him, or gave it up to him.

The plaintiff having rested his case upon proof of the foregoing facts, the trustee proposed to show that, prior to July 2, 1855, the principal defendant, who was a nephew of the trustee's wife, had been in trade in Lowell, Mass.; had become embarrassed, and could not meet his engagements; that, to avoid being forced into insolvency, or having his property wasted by being attached and sold in suits brought against him by his creditors, he determined to sell out his entire stock to his brother-in-law, Charles R. Hayward, of Worcester, Mass., and himself divide the proceeds among his creditors; that his brother-in-law was worth $5000 or $6000, vested in real estate, but had no ready money, and could not purchase the stock unless some one would loan him the money to enable him to do so; that the trustee agreed to loan him money for that purpose, and did, accordingly, let him have the sum of $3314, which was the amount of the inventory of the principal defendant's stock of goods, and took said Hayward's note therefor; that the next morning after the trustee advanced the money to Hayward, and within a few hours thereafter, on the 2d day of July, 1855, the principal defendant placed the same money in the trustee's hands to keep for him, and the trustee thereupon brought the same with him to Dover, and has ever since retained $2500 of it; that, on the 2d day of July, 1855, the creditors of the principal defendant attached the stock of goods purchased by Hayward, in his hands, as still the property of the principal defendant; that, on the 5th day of July, 1855, proceedings in insolvency were commenced by his creditors against the principal defendant, under the insolvent laws of Massachusetts; on the 12th day of July, 1855, said principal defendant was decreed to be an insolvent debtor, and James M. Peabody appointed his assignee, and on the 25th day of July, 1855, all the estate, real and personal, of the principal defendant was, by a decree of the commissioner of insolvency for Middlesex county, Mass., conveyed and assigned to said Peabody, thereby "to vest in said assignee all debts due to said Brown, and all his rights of action," &c.; that, on the 16th day of July, 1855, said Hayward brought an action against the officer who had attached the stock of goods on writs against the principal defendant, to recover of him

the value thereof; that, after the commencement of the proceedings in insolvency, the assignee of the principal defendant prosecuted the suits against him to final judgment, and received the proceeds of the stock of goods, and the same were distributed among the creditors who proved their claims under the commission; that, after Hayward had commenced his suit against the officer, it was agreed between himself and the principal defendant that, if he failed in that suit, Brown should let the $3314 remain in the trustee's hands, to pay said Hayward's note; that, soon after July 2, 1855, the trustee let the principal defendant have $400, and soon afterward other sums, so that, on the 24th day of September, 1855, only $2500 remained in the trustee's hands; that on that day the trustee, in writing, accepted the draft for $2500 in favor of Aldrich, upon a parol agreement of the principal defendant that he would control it, and if Hayward failed in his suit against the officer, the draft should be returned to the trustee; but if Hayward prevailed in his suit, then the trustee was to pay the draft to him; that the trustee had been notified of the arrangement between the principal defendant and Hayward, as to the money's remaining in his hands to offset Hayward's note, by the principal defendant, soon after it was entered into, and had assented thereto, and agreed to send his note to said Hayward if he failed in said action, the principal defendant engaging to refund so much of the money as he had previously taken from the trustee; that, in February or March, 1856, before the service of the plaintiff's writ, the principal defendant, Hayward, and the trustee, met at the trustee's house, in Dover, and mutually agreed to carry out the arrangements previously entered into between the principal defendant, and the trustee and Hayward, respectively; that, after Hayward's action against the officer was decided against said Hayward, in the fall of 1857, the draft for $2500 was given up to the trustee by said principal defendant, in whose hands it had been placed by said Aldrich, and the trustee thereupon transmitted to said Hayward his note for the $3314, surrendering up the same in accordance with his previous agreement with the principal defendant so to do.

The plaintiff never proved his claim before the commissioner of insolvency in Massachusetts, and never became, in any way, a party to the proceedings in insolvency. The plaintiff's claim against the principal defendant was upon notes, dated and payable in Boston, to a firm there, by whom they were sold and transferred before due to the plaintiff, who, at the time of said sale and transfer, was and still is a citizen of Connecticut, and said defendant a citizen of Massachusetts. The assignee of the principal defendant has never demanded or claimed the money in the hands of the trustee, and the principal defendant has never obtained any discharge in insolvency from his debts, or any of them.

The court ruling that parol evidence could not be received to contradict and control the trustee's written acceptance of the draft in favor of Aldrich, to which ruling the trustee excepted, a verdict, finding the trustee chargeable for the sum of $2500, was thereupon taken, by consent, subject to the opinion of the court upon the

whole case, such judgment to be rendered as the facts would warrant, or a new trial to be granted, as the court might determine ; and the questions were transferred.

*Woodman,* for the trustee.

*Wheeler,* for the plaintiff.

SARGENT, J.* The statute provides that, upon disclosure made by any trustee, the plaintiff, by leave of court and on payment of costs, may have the liability of the trustee tried by the jury, and that " on such trial the disclosure so made, and any other competent evidence, may be offered." The disclosure is made competent evidence to be submitted to the jury, but we do not understand that by this provision it is made necessary for the plaintiff to introduce that evidence. He may introduce such as he deems best for his case ; and when he has proved enough for his case, he is not obliged to use more because he may chance to have more that would be competent if he needed it. The statute is not in terms, and was not evidently intended to be peremptory, and the ruling of the court on that point was correct.

Upon all the evidence in the case, that of Aldrich particularly, we think that the draft, which the trustee accepted, and which was payable to the order of Aldrich, is to be treated here as though it had been given directly to Brown in the first instance. If this draft had been given by Brown to Aldrich in payment of a debt due to Aldrich, and it had been accepted by Smith, the trustee, then the draft would have been good in Aldrich's hands, and the evidence offered would have been clearly inadmissible ; or, if Aldrich had sold and indorsed this draft, while in his hands, to a third person, for value and without notice of the real understanding between the parties, different questions would have arisen.

But the draft always belonged to Brown. While Aldrich held it, he held it for Brown, and as Brown's property, as he testifies ; and the trustee is chargeable, if at all, in no other way than he would have been upon his original indebtedness. If this order was given to keep the money in the trustee's hands from the creditors of Brown, then it was fraudulent as to such creditors and void ; and the evidence offered would have been clearly competent if it had been offered by the plaintiff for that purpose. If Aldrich had been seeking to recover the money on this order, then the evidence offered might have been incompetent, as tending to contradict the trustee's written promise to him, contained in the acceptance of the order. But this could only have been, in case Aldrich was the real owner and holder, *bonâ fide,* of the order, which the plaintiff had first proved that he was not.

After the plaintiff had proved that Aldrich had no interest in the draft and never claimed to have, but that it always belonged to Brown, and that Aldrich himself was not claiming any thing under it, but the plaintiff was seeking to charge the trustee as being

* Doe, J., did not sit.

indebted to Brown upon that very order, it is difficult to see in what view the court could have ruled that the testimony offered was incompetent upon the express and only ground that it could not be received to contradict and control the trustee's written acceptance to Aldrich. The plaintiff's evidence had shown how the fact was in relation to this draft or order, and the evidence of the trustee only confirmed the facts which the plaintiff had proved, so far as they related to the "written acceptance to Aldrich," and tended to show that the trustee had a defense to this draft, as against Brown and his creditors. The evidence was not offered with any view whatever to contradict or control the trustee's written acceptance to Aldrich, but to meet the plaintiff's case, and show that he had a good defense to the order as against Brown, to whom it had been proved by the plaintiff, and was admitted on all hands, and by every body, this draft had always belonged.

As the case stood, the evidence was clearly unobjectionable, upon the ground upon which it was excluded. The only question was, did it meet the plaintiff's case, and tend to show that, as against Brown, to whom the plaintiff had proved that the draft then and ever had belonged, the trustee had any defense ? And in this view the evidence was clearly competent. The case stands just as though the draft had been given to Brown originally, instead of Aldrich, or as though the trustee had given Brown a note, or, in fact, just as though he had given him neither; but the case stood upon his original indebtedness to Brown.

Leaving out of the question for the present the manner in which the money came into the hands of the trustee, but taking it to be there as the money of Brown, the principal defendant, let us see whether the evidence was competent, as tending to make out a good defense as against Brown, because any defense which would avail the trustee in a suit between him and Brown, would avail him in this case.

The evidence offered was, substantially, that, on the 24th of September, there was in the trustee's hands $2500, which had been placed there by the defendant, and on that day the trustee accepted the draft in question ; that on that day he held Hayward's note for a larger sum than that ; that it had been previously agreed between Hayward and Brown that, on certain conditions, this money of Brown's in the trustee's hands should be paid to Hayward, or should belong to him — should become his in the hands of the trustee — and on certain other conditions it was to remain Brown's ; that upon that day Brown obtained the trustee to accept this draft upon the parol agreement of Brown that he would control the draft, and if the condition transpired, upon the happening of which this money was to be paid to Hayward, or to be accounted for to him by the trustee, then this draft was to be given up or canceled, and returned to the trustee, but in the other event it was to be paid to Brown ; that Brown had notified the trustee of this arrangement, to which he assented, and that subsequently, and before the service of this writ, there was a meeting of all three of the parties, Hayward, Brown, and the trustee, when it was mutually agreed by all

to carry out the arrangement thus previously made between Hayward and Brown, and Brown and the trustee; that, while this agreement was subsisting, this writ was served upon the trustee; and that the contingency resulted in such a way afterward, as to make the trustee liable, under that agreement, to account to Hayward for this money, and not to Brown; and that, in pursuance of such agreement, the money had been paid over to Hayward, and the draft had been given up to the trustee by Brown.

Now, upon the authority of *Ela* v. *Kimball*, 30 N. H. 126, it might be difficult to see why, upon this evidence, the trustee might not have successfully defended against Brown, had he sued to recover this money, upon the ground of a failure of consideration; and, perhaps, he might have stood equally well in such a suit, upon the ground of a payment and extinguishment of his liability to Brown. *Shepard* v. *Temple*, 3 N. H. 455; *Crossman* v. *Fuller*, 17 Pick. 171; *Ward* v. *Winship*, 12 Mass. 480.

But another portion of the evidence offered seems to have been competent, as tending to show a good defense on the part of the trustee as against Brown, namely, that which relates to the proceedings in insolvency in Massachusetts. To be sure this draft was given after these proceedings had been commenced in that State, but, as between the trustee and Brown, the giving of this draft did not change the nature of the trustee's indebtedness to him; and if the proceedings in insolvency there had vested this money in the trustee's hands in the assignee of Brown in Massachusetts, then the draft was without consideration, as between the trustee and Brown, and could not be collected by the latter.

Now it can make no difference whether Brown is discharged as such insolvent or not, or whether he ever shall be so discharged. That can not affect the decree by which all his property passed to and vested in his assignee.

The first question is, have the proceedings so far been regular, and according to the provisions of the law? If so, then Brown, being decreed to be an insolvent debtor, and an assignee being appointed, by force of the decree of the commissioner of insolvency in that State, all Brown's real and personal estate was conveyed and assigned to said Peabody, and all debts due to Brown, and all his rights of action vested in said assignee, for the benefit of his creditors.

The second question is, according to the decision in *Hall* v. *Boardman*, 14 N. H. 38 (the alleged trustee living in this State, and the debtor in Massachusetts), whether the creditor has established any right to the fund here, since the assignment, and which is superior to it, so as to entitle him to hold the fund, notwithstanding such assignment.

In the case last cited, it was held, that when the contract was such, and the parties were so situated, that a discharge of the defendant under the insolvent laws of Massachusetts would discharge the contract in the hands of the plaintiff, then his attachment of the funds here could not avail him against such assignment. The same doctrine is held in *Hoag* v. *Hunt*, 21 N. H. 106,

where the alleged trustee resided in this State, and there had been no discharge in Massachusetts—in that respect resembling the present case—and upon ascertaining that the contract and parties were such as subjected them to the operation of the insolvent laws of Massachusetts, it was held that the assignment vested the funds in the hands of the assignee, as against the attachment of the same funds by the plaintiff in this State.

If, then, this plaintiff is in a position to be bound by the discharge of the defendant in another State by the insolvent laws of that State, when such discharge shall be obtained, then the proceedings, so far as they have gone, if regular, would bind the parties here so far ; and the plaintiff can not, after such an assignment there, take the funds thus assigned for the benefit of all the defendant's creditors who choose to prove their claims, and appropriate them in payment of his own debt. Is this plaintiff thus situated ?

The plaintiff's claim against the defendant was upon notes made and payable in Boston by the defendant, who did then and now does reside in Boston, to a firm which at the time resided there, but which transferred these notes, before due, to the plaintiff, who was then and still is a resident of Connecticut. There is no doubt but that this case comes within the provisions of the law of Massachusetts. The only question is, how far this plaintiff is bound by the insolvent laws of that State, as a citizen of another State, under the provisions of the constitution of the United States.

In *Stevens* v. *Norris*, 30 N. H. 466, it was held that a discharge under the insolvent laws of Massachusetts is an effectual bar to a suit upon a note, made and payable in that State, between parties resident there at the time of making it, notwithstanding the payee and holder of the note removed to New-Hampshire before any proceedings were commenced under the insolvent laws. *Bell*, J., in delivering the opinion in that case, says : "Under the laws of Massachusetts, these notes were made subject to the condition that the maker might be discharged without payment, by proper proceedings under their insolvent law. The liability to be so discharged was an essential condition of their nature, which attached to them always and every where, and in the hands of every holder, whether resident in Massachusetts or elsewhere."

This doctrine is believed to be correct, and is decisive of the case at bar. For it can make no difference whether the holder carries the note himself into another State and becomes a resident there, or the note is transferred to another, who is a citizen of such other State ; because the party purchasing the note takes it subject to this condition, and liability to be thus discharged.

In *Brigham* v. *Henderson*, 1 Cush. 430, and in *Converse* v. *Bradley*, 1 Cush. 435, the same point was decided in the same way, as being the law in Massachusetts ; and *Metcalf*, J., who delivered the opinion in the former case, strongly intimates his concurrence with the views of the plaintiff's counsel in *Cook* v. *Moffat*, 5 How. 295, which were, that the fact of the contract being between citizens of different States at the time when it was made, was what prevented the

discharge in one State from being a bar against the claim of the citizen of the other State.    See, also, *Sanderson* v. *Bradford*, 10 N. H. 260.

But the decisions in Massachusetts have gone much further than that, and in *Scribner* v. *Fisher*, 2 Gray 43, the court held that a discharge under the insolvent laws of that State is a bar to any action on a contract made by a citizen of that State with a citizen of another State, who does not prove his claim under those laws, if the contract, by its express terms, is to be performed in that State. From this opinion *Metcalf*, J., dissented, upon the ground that, in his views, the contract to be barred must have been made between citizens of the same State.    And the court of appeals in New-York and in Maryland have since held the law to be as stated by *Metcalf*, J., in his opinion.

In *Whitney* v. *Whiting*, 35 N. H. 471, after an examination of the authorities, *Fowler*, J., says : " We are inclined to believe that the doctrine of *Scribner* v. *Fisher* may be sustained, not upon the ground upon which it is placed in the opinion of the court, but on that of waiver, the citizen of another State being regarded as having voluntarily surrendered his constitutional extra territorial rights, by having accepted a contract, by its express terms to be executed in the State of his debtor."    This point does not arise, however, in the case before us.    Upon authorities which are unquestioned, as we have seen, the evidence offered in this case was competent, as tending to show that the trustee was not chargeable.    And this last ground of defense would be good in any event, whether the money were placed in the trustee's hands by Brown in good faith or in bad faith, or whether it were received by the trustee honestly or fraudulently.    These questions may become material, should the assignee seek to recover this money from the trustee, but do not arise here in settling the question of the trustee's liability, because, if there is nothing in his hands that any body can hold, he must be discharged, and if there is any thing in his hands, it belongs to the assignee, and not to this plaintiff.

Section 34 of chapter 208 of the Revised Statutes, provides that " Whenever it shall appear that any person summoned as trustee has received the property of the principal defendant, or holds any bill of sale or other conveyance from him, or has done any act in relation thereto, with intent to aid him in defeating or delaying any creditor, costs shall be taxed against such trustee."

In the case before us it is too plain, as it would seem, for discussion, that the trustee here received the property of the principal defendant, with intent to aid him in defeating or, at least, delaying some creditor or creditors, and that the giving of the draft to Aldrich was an act with the same intent ; and, therefore, costs are to be taxed against the trustee, in favor of the plaintiff, if the trustee be discharged.

The verdict must be set aside and a new trial granted, unless it is admitted that the evidence offered in regard to the proceedings in insolvency is true, in which case the trustee must be discharged, but must pay the plaintiff's costs.