GEBHARD *v.* THE CANADA SOUTHERN RAILWAY COMPANY.

*(Circuit Court, S. D. New York.* January 24, 1880.)

CONTRACT—PLACE OF PERFORMANCE—LEX FORI.—The payment of certain first mortgage railroad bonds executed and issued in the dominion of Canada, and payable in the city of New York, is not discharged by virtue of an act of parliament of the dominion of Canada authorizing such railroad to issue new bonds, bearing a lower rate of interest, in substitution of such former bonds.

WALLACE, J. The plaintiff sues upon certain obligations executed and issued by the defendant representing instalments of interest due and unpaid upon the defendant's issue of first mortgage bonds. The case, for convenience, may be considered as though the action were brought to recover several instalments of interest due on the first day of January, 1877, upon the first mortgage bonds of the defendant. These bonds were executed and issued in Canada, but by their terms were payable at the city of New York.

The defendant is a Canadian corporation, and insists in defence that it is discharged from payment of these bonds by virtue of an act of the parliament of the Dominion of Canada, passed in April, 1878, whereby the defendant was authorized to issue new bonds, payable in 30 years, in substitution of its first mortgage bonds, and bearing a lower rate of interest. This act declares that the assent of the holders of the first mortgage bonds shall be deemed to have been given to the substitution of the new bonds. The plaintiff in fact never assented to the substitution of the new bonds in the place of the first bonds.

On first impression the defence seems an extraordinary one. It rests upon the theory that the original bonds having been issued in Canada are contracts controlled, as respects the obligation and its discharge, by the law of Canada; and that the Canadian parliament, in the exercise of its unlimited powers, has discharged or modified the obligation of the contract, and that, even though this be an arbitrary or unjust act, it is conclusive upon the rights of the parties.

Several general propositions applicable to the case are ele-

mentary. The law of the place of the contract determines the nature, the obligation, and interpretation of the contract. But when the contract is to be performed in a different place to that in which it is made, the law of the place of performance, in conformity to the presumed intention of the parties, determines the nature, obligation, and interpretation of the contract. A defence or discharge, good by the law of the place of the contract, is good wherever the contract is sought to be enforced; but when the place of performance is not the place where the contract was made, the defence or discharge is valid or invalid according to the law of the place of performance. The doctrine that a defence or discharge good by the law of the place of the contract is good everywhere, is subject to several qualifications, one of which is that the discharge or defence must not be of such character that it would conflict with the duty of the state where it is sought to be enforced towards its own citizens to recognize it.

The laws of a state have no extraterritorial vigor, and are enforced by other states only upon considerations of comity, and these always yield to those higher considerations which demand of every state the protection of its own citizens against the unwarrantable acts of a foreign sovereignty. These familiar general propositions require no citation from the authorities to support them. Applying them here the defence cannot succeed.

The plaintiff sues upon a contract which was made in Canada, but was to be performed in the state of New York, the place of payment being the place of performance; and a discharge of the obligation which derives its vitality solely from the authority of a foreign sovereignty, is of no more effect than would be the case if New York were the place where the contract was made. One of the most common instances, in illustration of the rule, is where the defence of usury is interposed, in an action brought here upon an obligation made in a foreign state, and bearing a higher rate of interest than is permitted by the laws of that state. When the obligation is payable here, the cases all agree that the usury laws of the foreign state have no application.

Another class of cases, more analogous to the present because they involve the effect of an *ex post facto* discharge of the obligation, is where a discharge in bankruptcy has been obtained under the laws of the state where the contract was made. Such a discharge is not a defence when the place of performance of the obligation is in a different state. The question has frequently been considered by the supreme court of the United States, and, although generally discussed in connection with constitutional questions, it has been ruled, with the concurrence of all the judges, that, irrespective of other considerations, the discharge is inoperative when obtained in a different state from that where the debt was payable, because the contract and its obligation cannot be affected by the legislation of other states. See opinions of *Grier, Daniel,* and *Woodbury,* JJ., in *Cook* v. *Moffat,* 5 How. 295.

The decision of the present case may properly rest upon this ground alone, but if the obligations in suit were Canadian contracts the defence would be untenable. The act of the Canadian parliament is an attempt to impair and destroy the obligation of a contract. Undoubtedly it was supposed, in view of the financial embarrassments of the defendant, that the new obligations authorized by the act would be acceptable to the holders of the original bonds, and would be of equal, if not of greater value. But the plaintiff was entitled to the money due by the terms of his bonds, and any legislative act which attempts to deprive him of it by compelling him to accept something different, violates fundamental principles of justice, and is in effect an arbitrary confiscation of the plaintiff's property. Although, by the theory of the British constitution, parliament is omnipotent, the jurists and statesmen of England have denied its right to transcend the boundaries which confine the discretion of parliament within the ancient landmarks.

When it was proposed by act of parliament to impair vested property rights by remodeling the charter of the East India Company, in 1783, the attempt was denounced by Lord Thurlow and Mr. Pitt "as a total subversion of the law and constitution of the country," and some of the greatest jurists and

judges of England have declared that an act of parliament against common right and natural equity is void. Angel on Corporations, § 767.

In our own country we regard such acts as so subversive of natural rights as not to be within the authority delegated to the legislative department of the government.

It is sometimes supposed that because the constitution of the United States prohibits the state from passing such laws, and is silent as to the United States, the authority to pass them resides in congress by implication. This is an erroneous assumption. As said by *Wilson*, J., (13 Wend. 328,) "It is now considered an universal and fundamental proposition in every well regulated and properly administered government, whether embodied in a constitutional form or not, that private property cannot be taken for private purposes, nor for public, without just compensation, and that the obligation of contracts cannot be abrogated or essentially impaired. These and other vested rights of the citizen are held sacred and inviolable, even against the plentitude of power of the legislative department."

The same views are expressed by the learned author of Cooley's Constitutional Limitations, (176,) as follows: "However proper and prudent it may be expressly to prohibit those things which are not understood to be within the proper attributes of legislative power, such prohibition can never be essential when the extent of the power apportioned to the legislative department is found, upon examination, not to be broad enough to cover the obnoxious authority. The absence of such prohibition cannot, by implication, confer power."

A contract is property; to destroy it partially is to take it, and to do this by arbitrary legislative action is to do it without due process of law. *Sinking Fund Cases*, 99 U. S. 746–7.

If any of our own states had passed such an act as the one under consideration it would have been the duty of the courts of that state to treat it as an unlawful exercise of power; and certainly it cannot be expected that this court will tolerate legislation by a foreign state which it would not sanction if

passed here, and which, if allowed to operate, would seriously prejudice the rights of a citizen of this state.

Comity can ask no recognition of such unjust foreign legislation, and the case falls under the qualification of the general rule which prescribes that when the foreign law is repugnant to the fundamental principles of the *lex fori* it will be ignored.

Judgment for plaintiff.